# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ANGELA SHEPHERD and LAUREN BETANCOURT,<br><br>      Plaintiffs,<br>v.<br><br>VINTAGE PHARMACEUTICALS, LLC, ENDO PHARMACEUTICALS, INC., ENDO PHARMACEUTICALS HOLDINGS, INC., PATHEON INC., JOHN DOE COMPANY I, JOHN DOE COMPANY II, JOHN DOE COMPANY III, JOHN DOE COMPANY IV, JOHN DOE COMPANY V, JOHN DOE COMPANY VI and JOHN DOE COMPANY VII,<br><br>      Defendants. | Civil Action No. 1:11-cv-03805-SCJ |

## DEFENDANTS' JOINT BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR CERTIFICATION

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ......................................................................1

PROCEDURAL HISTORY & FACTUAL BACKGROUND ................................4

   I.    The Recall.............................................................................................4

   II.   Plaintiffs' Claims and the Putative Classes..........................................6

   III.  The Denial of Plaintiffs' Petition to Create a Multi-District
        Litigation. ...........................................................................................7

ARGUMENT ...............................................................................................8

   I.    Plaintiffs Cannot Satisfy the Requirements of Rule 23. .......................8

       A.    The Classes Are Not Ascertainable. ...........................................9

            1.    The Putative Class and Subclasses Are Not
                   Ascertainable. ..................................................................9

            2.    Subclasses A and B Are Not Ascertainable. ................11

            3.    The Economic Loss Class Is Not Ascertainable. ..........12

       B.    Plaintiffs Are Not Adequate Representatives. ..........................15

       C.    Plaintiffs' Claims Are Not Typical of the Putative Class.........17

       D.    Plaintiffs Cannot Satisfy the Requirement of Commonality.....19

       E.    Plaintiffs Cannot Establish Predominance................................21

            1.    Common Issues of Law Do Not Predominate...............21

                a.    Choice of Law Issues Preclude Predominance ....23

                b.    Strict Liability and Negligence Law Varies
                   Materially. ..............................................................25

                c.    Breach of Warranty Law Is Not Uniform. ...........26

           d.      State Consumer Protection Statutes Vary
Materially ............................................................28

           e.      Unjust Enrichment Law Is Not Uniform..............29

    2.      Common Issues of Fact Do Not Predominate. ...............30

           a.      Individual Issues Exist as to Whether Putative
Members Received Defective Packages ..............30

           b.      Individual Issues Exist as to the Cause of
Economic Harm....................................................31

           c.      Individual Issues Exist as to Whether an
Individual's Physical Symptoms (Including
Pregnancy) Were Caused by the Use of a
Defective Package. ...............................................32

    3.      Individualized Damage Issues Predominate...................33

           a.      Plaintiffs Have Not Presented a Damages
Model....................................................................34

           b.      Individual Damages Issues Predominate in the
Proposed Personal Injury Subclasses ..................34

           c.      Individual Damages Issues Predominate in the
Proposed Economic Injury subclass....................35

F.      Plaintiffs Cannot Satisfy the Superiority Requirement. ..........37

CONCLUSION ........................................................................................38

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alligood v. Taurus Intern. Mfg., Inc.*,
  No. CV 306-003, 2009 WL 8387645 (S.D. Ga. Mar. 4, 2009) ..........................22

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997)................................................................................2, 38

*Andrews v. RAM Med., Inc.*,
  No. 7:11-CV-147 HL, 2012 WL 1358495 (M.D. Ga. Apr. 19,
  2012) ...............................................................................................................23

*In re Aredia and Zometa Prods. Liab. Litig.*,
  2007 U.S. Dist. LEXIS 75458 (M.D. Tenn. Oct. 10, 2007) ................................3

*Auto. Leasing Corp. v. Mahindra & Mahindra, Ltd.*,
  2014 WL 988871 (N.D. Ga. March 14, 2014) ......................................23, 24, 25

*Babineau v. Fed. Exp. Corp.*,
  576 F.3d 1183 (11th Cir. 2009) ........................................................................21

*Ballew v. Matrixx Initiatives, Inc.*,
  2008 WL 4831481 (E.D. Wash. Oct. 31, 2008) ...................................................3

*Blain v. Smithkline Beecham Corp.*,
  2007 WL 178564 (E.D. Pa. Jan. 25, 2007)..........................................................3

*Burke v. Rivo*,
  551 N.E.2d 1 (Mass. 1990) ...............................................................................35

*Bussey v. Macon County Greyhound Park, Inc.*,
  562 Fed. App'x 782 (11th Cir. 2014) ..............................................................9, 33

*Byes v. Telecheck Recovery Servs., Inc.*,
  173 F.R.D. 421 (E.D. La. 1997) ........................................................................16

*Castano v. Am. Tobacco Co.*,
   84 F.3d 734 (5th Cir. 1996) ..............................................................................26

*Chin v. Chrysler Corp.*,
   182 F.R.D. 448 (D.N.J. 1998)...........................................................................27

*Cole v. Gen. Motors Corp.*,
   484 F.3d 717 (5th Cir. 2007) ............................................................................27

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013)......................................................................................33

*Dodson v. U-Needa Self Storage, LLC*,
   96 P.3d 667 (Kan. Ct. App. 2004) ....................................................................29

*In re Factor VIII or IX Conc. Blood Prod. Litig.*,
   2005 WL 497782 (N.D. Ill. March 1, 2005).......................................................3

*Firestone Tire & Rubber Co. v. Cannon*,
   452 A.2d 192 (Md. App. 1982), *aff'd* 456 A.2d 930 (Md. 1983) .....................28

*Fogel v. Zell*,
   221 F.3d 955 (7th Cir. 2000) ............................................................................31

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.*,
   177 F.R.D. 360 (E.D. La. 1997) .......................................................................27

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
   194 F.R.D. 484 (D.N.J. 2000)...........................................................................27

*In re Fosamax Prod. Liab. Litig.*,
   2008 WL 58890 (S.D.N.Y. Jan. 3, 2008) ...........................................................3

*Foster v. St. Jude Medical Inc.*,
   229 F.R.D. 599 (D. Minn. 2005) ........................................................................3

*Frank Briscoe Co. v. Ga. Sprinkler Co.*,
   713 F.2d 1500 (11th Cir. 1983) ........................................................................23

*Fulton-DeKalb Hosp. Auth. v. Graves*,
   314 S.E.2d 653 (Ga. 1984) ...............................................................................25

*Goode v. Tamko Asphalt Prods., Inc.*,
   783 S.W.2d 184 (Tenn. 1989) ...........................................................26

*In re Grand Theft Auto Video Game Consumer Litig.*,
   251 F.R.D. 139 (S.D.N.Y. 2008) ......................................................28

*Haggart v. Endogastric Solutions, Inc.*,
   2012 U.S. Dist. Lexis 89767 (W.D. Pa. June 28, 2012) ......................3

*Heng v. Donald*,
   No. CIV.A 7:08-CV-5 (HL), 2010 WL 497347 (M.D. Ga. Feb. 4,
   2010) ...............................................................................................19, 21

*Hillis v. Equifax Cons. Servs., Inc.*,
   237 F.R.D. 491 (N.D. Ga. 2006) ...................................................17, 18

*In re Hitachi Television Optical Block Cases*,
   2011 WL 9403 (S.D. Cal. Jan. 3, 2011) ...........................................27

*In re HP Inket Printer Litig.*,
   2008 WL 2949265 (N.D. Cal. July 25, 2008) ....................................28

*Hughes v. Stryker Corp.*,
   423 F. App'x 878 (11th Cir. 2011) .................................................20, 31

*Ilhardt v. A.O. Smith Corp.*,
   168 F.R.D. 613 (S.D. Ohio 1996)......................................................30

*Jefferson v. Lead Indus. Ass'n, Inc.*,
   106 F.3d 1245 (5th Cir. 1997) ...........................................................26

*Johnston v. HBO Film Mgmt., Inc.*,
   265 F.3d 178 (3d Cir. 2001) ..............................................................38

*Karhu v. Vital Pharm., Inc.*,
   No. 13-60768-CIV, 2014 WL 815253 (S.D. Fla. Mar. 3, 2014),
   *aff'd*, 2015 WL 3560722 (11th Cir. June 9, 2015) ...........................27

*Karhu v. Vital Pharms., Inc.*,
   2015 WL 3560722 (11th Cir. June 9, 2015)............................9, 11, 13

*Kessler v. Fanning*,
   953 S.W.2d 515 (Tex. App. 1997)......................................................29

*Kirkpatrick v. J. C. Bradford & Co.*,
   827 F.2d 718 (11th Cir. 1987) ....................................................15, 16

*Klay v. Humana, Inc.*,
   382 F.3d 1241 (11th Cir. 2004) ....................................3, 22, 23, 30

*Krueger v. Wyeth, Inc.*,
   2008 U.S. Dist. LEXIS 12236 (S.D. Cal. Feb. 19, 2008)....................3

*Lawson v. Life of the S. Ins. Co.*,
   286 F.R.D. 689 (M.D. Ga. 2012)................................................21, 22

*Likes v. DHL Exp.*,
   288 F.R.D. 524 (N.D. Ala. 2012) ...................................................22

*London v. Wal-Mart Stores, Inc.*,
   340 F.3d 1246 (11th Cir. 2003) .......................................................15

*Marcus v. BMW of N. Am., LLC*,
   687 F.3d 583 (3d Cir. 2012) ............................................................13

*Mauldin v. Wal-Mart Stores, Inc.*,
   No. 1:01-cv-2755-JEC, 2002 WL 2022334 (N.D. Ga. Aug. 23,
   2002) .................................................................................................9

*McCarthy v. Yamaha Motor Mfg. Corp.*,
   994 F. Supp. 2d 1329 (N.D. Ga. 2014)..............................................23

*In re McDonald's French Fries Litig.*,
   257 F.R.D. 669 (N.D. Ill. 2009)..................................................28, 29

*In re McNeil Consumer Healthcare*,
   877 F. Supp. 2d 254 (E.D. Pa. 2012)................................................14

*Miller v. Janssen Pharm. Prods., L.P.*,
   No. 05-4076, 2007 U.S. Dist. LEXIS 31863 (S.D. Ill. May 1, 2007).................3

*Newton v. Southern Wood Piedmont Co.*,
    163 F.R.D. 625 (S.D. Ga. 1995) ..................................................................11, 12

*Palmer v. A.H. Robins Co.*,
    684 P.2d 197 (Colo. 1984)...............................................................................28

*In re Panacryl Sutures Prod. Liab. Cases*,
    263 F.R.D. 312 (E.D.N.C. Nov. 13, 2009) ........................................................3

*Parker v. Bell Ford, Inc.*,
    425 So.2d 1101 (Ala. 1983)...............................................................................28

*In re POM Wonderful LLC*,
    MDL No. 2199, 2014 WL 1225184 (C.D. Cal. Mar. 25, 2014)........................34

*In re Prempro Prod. Liab. Litig.*,
    2007 WL 951878 (E.D. Ark. Mar. 28, 2007) ......................................................3

*In re Prempro Prod. Liab. Litig.*,
    230 F.R.D. 555 (E.D. Ark. 2005) ........................................................................3

*Provencio v. Wenrich*,
    261 P.3d 1089 (N.M. 2011) ..............................................................................25

*In re Prudential Ins. Co. America Sales Prac. Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) ..............................................................................37

*In re Qualitest Birth Control Prods. Liab. Litig.*,
    38 F. Supp. 3d 1388 (U.S. Jud. Pan. Mult. Lit. 2014).....................................7, 8

*Rahman v. Mott's LLP*,
    No. 13-cv-03482-SI, 2014 WL 6815779 (N.D. Cal. Dec. 3, 2014) ..................34

*In re Rail Freight Fuel Surcharge Antitrust Litigation*,
    725 F.3d 244 (D.C. Cir. 2013)...........................................................................34

*Randolph v. J.M. Smucker Co.*,
    303 F.R.D. 679 (S.D. Fl. 2014) .............................................................13, 34, 37

*Reid v. Lockheed Martin Aeronautics Co.*,
    205 F.R.D. 655 (N.D. Ga. 2001) ............................................................19, 21

*In re Rezulin Prods. Liab. Litig.*,
  210 F.R.D. 61 (S.D.N.Y. 2002) ..........................................................................36

*Rivell v. Private Health Care Sys., Inc.*,
  No. CV106-176, 2009 WL 10318921 (S.D. Ga. Aug. 24, 2009)................17, 18

*Russell v. Vintage Pharms., LLC, et al.*,
  No. 4:13-cv-0425-BCW (W.D. Mo. Sept. 8, 2014) .............................................2

*S&R Assocs., LP v. Shell Oil, Inc.*,
  725 A.2d 431 (Del. Super. Ct. 1998)..................................................................29

*Sanders v. Johnson & Johnson, Inc.*,
  2006 WL 1541033 (D.N.J. June 2, 2006)..............................................................3

*Sherlock v. Stillwater Clinic*,
  260 N.W.2d 169 (Minn. 1977) ...........................................................................35

*Siegel v. Shell Oil Co.*,
  256 F.R.D. 580 (N.D. Ill. 2008), *aff'd*, 612 F.3d 932 (7th Cir.
  2010) ...................................................................................................................28

*Small v. Lorillard Tobacco Co.*,
  720 N.E.2d 892 (N.Y. 1999)...............................................................................29

*In re St. Jude Med., Inc.*,
  425 F.3d 1116 (8th Cir. 2005) ..............................................................................3

*St. Jude Medical, Inc., Silzone Heart Valve Prods. Liab. Litig.*,
  522 F.3d 836 (8th Cir. 2008) ................................................................................3

*Stills v. Gratton*,
  55 Cal. App. 3d 698 (Ct. App. 1976)..................................................................35

*Sweet v. Pfizer*,
  232 F.R.D. 360 (C.D. Cal. 2005).........................................................................3

*Univ. of Arizona Health Sciences Ctr. v. Superior Court of State in &
  for Maricopa County*,
  667 P.2d 1294 (Ariz. 1983) ...............................................................................35

*Vega v. T-Mobile USA, Inc.*,
   564 F.3d 1256 (11th Cir. 2009) ............................................................8

*Velazquez v. Abbott Labs.*,
   901 F. Supp. 2d 279 (D.P.R. 2012) ............................................20, 31

*In re Vioxx Prods. Liab. Litig.*,
   239 F.R.D. 450 (E.D. La. 2006) ............................................................3

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011).........................................................8, 9, 19

*Walker v. USAA Cas. Ins. Co.*,
   474 F. Supp. 2d 1168 (E.D. Ca. 2007) ...............................................29

*Walsh v. Ford Motor Co.*,
   130 F.R.D. 260 (D.D.C. 1990) ............................................................27

*Walter v. Hughes Communications*,
   No. 09-2136, 2011 WL 2650711 (N.D. Cal. July 6, 2011) ...............38

*Washington Water Power Co. v. Graybar Elec. Co.*,
   774 P.2d 1199 (Wash. 1989) ...............................................................26

*Wein v. Master Collectors, Inc.*,
   No. CIV.A. 1:94-CV-2694-JOF, 1995 WL 550475 (N.D. Ga. Aug.
   16, 1995) ..............................................................................................16

*Winslow v. Lewis-Shepard, Inc.*,
   562 A.2d 517 (Conn. 1989) .................................................................26

*In re Yasmin & Yaz (Drospirenone) Mktg.*,
   275 F.R.D. 270 (S.D. Ill. 2011) ............................................................3

*Zubrick v. Endo Pharm., Inc.*,
   No. 11-CV-8543, 2012 WL 3717749 (N.D. Ill. Aug. 27, 2012)...................2, 15

**Statutes**

Ariz. Rev. Stat. § 12-681 (2007)...............................................................25

Ark. Code Ann. § 16-116-101 (2008) ....................................................25

Colo. Rev. Stat. Ann. § 6-1-105(1)(u) ...................................................29

Colo. Rev. Stat. Ann. §§ 13-21-401-406 (2007) ...................................26

Colo. Rev. Stat. § 13-21-111.7 (1986) ...................................................26

Idaho Code Ann. §§ 6-1401-1410 (2007) ...............................................26

Ind. Code Ann. § 34-20-1-1 (2007) ........................................................26

Kan. Stat. Ann. § 50-626(b) ...................................................................29

Kan. Stat. Ann. § 60-3301 (2006) ...........................................................26

Ky. Rev. Stat. Ann.§ 411.300 (2008) .....................................................26

La. Civ. Code Ann. art 2298 (2007) .......................................................29

Me. Rev. Stat. Ann. tit. 14, § 221 (2007) ...............................................26

Miss. Code Ann. § 11-1-63 (2007) .........................................................26

Mo. Rev. Stat. § 537.760 (2005) ............................................................26

Mont. Code Ann. § 27-1-719 (2007) .......................................................26

N.C. Gen. Stat. § 998-1.1 (2007) ............................................................26

N.D. Cent. Code § 28-01.3 (2007) ..........................................................26

N.J. Stat. Ann. § 56:8-2 ..........................................................................29

N.J. Stat. § 2A:58C-1 through 58C-11 (2007) ........................................26

Neb. Rev. Stat. § 25-21, 180-182 (2007) ................................................26

O.C.G.A. § 10-1-370 ...............................................................................24

O.C.G.A. § 11-2-101 ...............................................................................24

O.C.G.A. § 51-1-11.1 ........................................................................24, 26

x

Ohio Rev. Code Ann. §§ 2307.71-2307.81 (2008)....................................................26

Or. Rev. Stat. §§ 30.900(1)-(3) (2005) ...................................................................26

S.C. Code Ann. § 15-73-10, -30 (2006)..................................................................26

S.C. Code Ann Sec. 15-73-20 (1976) .....................................................................26

Tenn. Code Ann. § 29-28-101 (2007)......................................................................26

Tex. Bus. & Com. Code § 17.50(a)(1)(B) ..............................................................28

Tex. Civ. Prac. & Rem. Code Ann. §§ 82.001-82.006 (2007) ...............................26

Utah Code Ann. §§ 78-15-1 (2007) ........................................................................26

Wash. Rev. Code §§ 7.72.010-.060 (2007) ............................................................26

Wyo. Stat. Ann. § 40-12-108(a)..............................................................................28

**Rules**

Fed. R. Civ. P. 23 ...............................................................................................8, 15

**Other Authorities**

J. White and R. Summers, *Uniform Commercial Code* 7 (2d ed. 1980) .................27

## PRELIMINARY STATEMENT

This putative class action arises from a September 2011 voluntary, nationwide, retail-level recall (the "Recall") of eight different oral contraceptive products by defendant Vintage Pharmaceuticals, LLC dba Qualitest Pharmaceuticals ("Qualitest"). Defendant Patheon Inc. ("Patheon") packaged the oral contraceptive pills for Qualitest, which distributed the pills to distributors and pharmacies. The nationwide class that Plaintiffs seek to certify consists of persons who purchased or ingested defectively designed, manufactured, packaged, sold, and distributed birth control pills. Plaintiffs also seek to certify four nationwide subclasses based on whether those individuals became pregnant, took their pregnancy to term, did not become pregnant but suffered "significant physical symptoms" or did not suffer "significant physical symptoms."

The Recall occurred based on an *extremely small* number of improperly packaged pill packs. Qualitest announced the Recall after it received notice from a pharmacist that a single blister pack returned by a patient had been improperly packaged. Specifically, that returned blister pack was rotated 180 degrees within the backing card, reversing the weekly tablet orientation and making the lot number and expiry date no longer visible. Defendants know of only *one* blister

pack that manifested that defect and was sold to a patient.[1]

As a threshold matter, certification should be denied because the putative class and subclasses are not ascertainable. Class membership turns on whether a putative class member received an improperly packaged blister pack, a determination that can only be made by visually inspecting each pack. Because the Plaintiffs no longer have their packs and it is highly unlikely that the majority of putative class members, if any, retained their packs, Plaintiffs improperly seek to determine class membership based on each putative class member's say-so and her self-reported subjective medical symptoms. This is not permitted under Rule 23.

Even if the proposed classes were ascertainable, it is difficult to fathom a case less-suited for class certification. First, with respect to the personal injury subclasses (subclasses B-D), in the nearly 20 years since the Supreme Court's landmark decision in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), a non-settlement personal injury product liability class has not been certified in any federal court.[2] Plaintiffs offer no reason to create the first exception to this

---

[1] Courts have dismissed cases arising out of the Recall because the plaintiff could not establish that she purchased a defective package. *See* Ex. A (*Russell v. Vintage Pharms., LLC, et al.*, No. 4:13-cv-0425-BCW (W.D. Mo. Sept. 8, 2014) (granting summary judgment)); *Zubrick v. Endo Pharm., Inc.*, No. 11-CV-8543, 2012 WL 3717749 (N.D. Ill. Aug. 27, 2012) (dismissing putative class action).

[2] The number of federal cases denying certification of nationwide product liability classes and reversing certification or affirming denial of certification is staggering.

uniform application of Supreme Court precedent.  Plaintiffs' personal injury claims necessitate individualized inquiry as to each putative members' particular alleged injury, pregnancy, complications, medical history, use of birth control and the effectiveness of any particular method of birth control and why a particular class member became pregnant in any given cycle, considering the overall failure of rate of birth control pills (even when taken perfectly).  Because such inquiries are inherently individualized and fact-intensive, and require analysis under different states' laws, there is no class-wide proof for the individual personal injuries alleged

---

Due to the number of cases, this footnote only cites cases decided in the last 10 years. *St. Jude Medical, Inc., Silzone Heart Valve Prods. Liab. Litig.*, 522 F.3d 836 (8th Cir. 2008); *Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004); *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1120-21 (8th Cir. 2005); *Haggart v. Endogastric Solutions, Inc.*, 2012 U.S. Dist. Lexis 89767 (W.D. Pa. June 28, 2012); *In re Yasmin & Yaz (Drospirenone) Mktg.*, 275 F.R.D. 270 (S.D. Ill. 2011); *In re Panacryl Sutures Prod. Liab. Cases*, 263 F.R.D. 312 (E.D.N.C. Nov. 13, 2009); *In re Fosamax Prod. Liab. Litig.*, 2008 WL 58890 (S.D.N.Y. Jan. 3, 2008); *Krueger v. Wyeth, Inc.*, 2008 U.S. Dist. LEXIS 12236 (S.D. Cal. Feb. 19, 2008); *Ballew v. Matrixx Initiatives, Inc.*, 2008 WL 4831481 (E.D. Wash. Oct. 31, 2008); *Miller v. Janssen Pharm. Prods., L.P.*, No. 05-4076, 2007 U.S. Dist. LEXIS 31863 (S.D. Ill. May 1, 2007); *Blain v. Smithkline Beecham Corp.*, 2007 WL 178564 (E.D. Pa. Jan. 25, 2007); *In re Panacryl Sutures Prods. Liab. Cases*, 263 F.R.D. 312 (E.D.N.C. 2009); *In re Prempro Prod. Liab. Litig.*, 2007 WL 951878 (E.D. Ark. Mar. 28, 2007); *In re Aredia and Zometa Prods. Liab. Litig.*, 2007 U.S. Dist. LEXIS 75458 (M.D. Tenn. Oct. 10, 2007); *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450 (E.D. La. 2006); *Sanders v. Johnson & Johnson, Inc.*, 2006 WL 1541033 (D.N.J. June 2, 2006); *In re Factor VIII or IX Conc. Blood Prod. Litig.*, 2005 WL 497782 (N.D. Ill. March 1, 2005); *In re Prempro Prod. Liab. Litig.*, 230 F.R.D. 555 (E.D. Ark. 2005); *Foster v. St. Jude Medical Inc.*, 229 F.R.D. 599 (D. Minn. 2005); *Sweet v. Pfizer*, 232 F.R.D. 360 (C.D. Cal. 2005).

here and certification of the personal injury subclasses should be denied.

Second, as to the proposed economic injury subclass (subclass A), a patchwork of state law and individualized issues of fact, including whether the putative member purchased a defective pack, whether she requested a reimbursement or replacement pack from her pharmacy, whether she suffered any harm from using a defective pack, and the amount and nature of each putative class member's alleged economic loss, warrant denial of class certification.

## PROCEDURAL HISTORY & FACTUAL BACKGROUND

### I. The Recall

On September 6, 2011, a pharmacist in Iowa returned three blister packs of the oral contraceptive pill Cyclafem 7/7/7 to Qualitest because *one* of the three packs had been packaged upside down, such that the orientation of the blister pack was turned 180 degrees obscuring the expiration date and lot number on the back of the pack and reversing the weekly tablet orientation. (Pl. Ex. 1 at 2). Following an extensive investigation into the extent of this packaging issue, the evidence shows that the patient in Iowa who received the rotated pack to this day is the only patient who has provided proof of receiving a blister pack that was packaged improperly such that the weekly tablet orientation was reversed. (Deposition of Roland Rajroop, attached hereto as Ex. B, at 125:15-128:8).

On September 9, 2011, having been notified of the rotated pack, in an abundance of caution, Patheon stopped manufacturing and Qualitest stopped distributing all eight oral contraceptive pills that were being packaged using the same process as the returned blister pack. Patheon then promptly began to re-inspect seven lots of oral contraceptive pills, consisting of 507,966 blister packs that were subject to the Recall. (Pl. Ex. 1 at 7, Pl. Ex. 5). Once the investigation concluded, Patheon found that, of those 507,966 blister packs, 53 were improperly packaged in reverse order. (Pl. Ex. 1 at 7-9). Thus, only one out of every 9,584.26 packs, or 0.01043% of the packs, was improperly packaged. (*Id.* at 7-9). Stated differently, 99.99% were not defective.

On September 15, 2011, Qualitest recalled all unexpired lots of the eight types of oral contraceptive pills that were packaged using the same process as the returned blister pack (the "Recalled Product"). (Ex. C). Qualitest announced that the Recall was implemented "because of a packaging error, where <u>select</u> blisters were rotated 180 degrees within the card, reversing the weekly tablet orientation and making the lot number and expiry date no longer visible." (*Id.* (emphasis added)). A Health Care Professional Communication gave specific instructions on how to identify an improperly packaged blister pack: "The packaging error can be detected by examining each blister pack for a Lot number and expiry date on the

back of the card and visible through the window; product that is packaged improperly has no visible Lot number and no expiry date." (Pl. Ex. 2). Only "select" blister packs exhibited the packaging error, which could be easily determined by looking at the back of the blister pack. (*See id.*, Ex. C).

## II.   <u>Plaintiffs' Claims and the Putative Classes</u>

In the Third Amended Complaint ("Complaint"), Plaintiffs allege that the Defendants "designed, manufactured, packaged, sold, and distributed birth control pills," (the "Recalled Products") that were "defectively and dangerously designed, manufactured, packaged, sold, and distributed." (D.E. No. 43 ¶¶ 10-11). Plaintiffs further allege that the Recalled Products "purchased by the Plaintiffs were packaged such that select blisters found inside the pill box were rotated 180 degrees within the card, reversing the weekly tablet orientation" and, that as a "result of the packaging error, the daily regimen for the BIRTH CONTROL PILLS left women without adequate contraception and at risk for unwanted pregnancy." (*Id.* ¶ 12). Based on those allegations, Plaintiffs assert the following claims: (1) strict liability; (2) negligence; (3) breach of express and implied warranty; (4) violation of state consumer protection statutes; and (5) unjust enrichment. (*Id.* at 11-19). Plaintiffs also seek to certify a nationwide class with four subclasses:

> Class: All persons within the United State of America who, within the applicable limitations period, purchased and/or ingested the

defectively designed, manufactured, packaged, sold, and distributed birth control pills with the trademark names Cyclafem 1/35, Cyclafem 7/7/7, Emoquette, Gildess FE 1.5/30, Gildess FE 1/20, Orsythia, Previfem, and Tri-Previfem.

Subclass A:  Of those Class members as defined above, those persons who ingested none of the birth control pills and/or ingested the birth control pills and experienced no significant physical symptoms;

Subclass B:  Of those Class members as defined above, those persons who experienced significant physical symptoms;

Subclass C:  Of those Class members as defined above, those persons who became pregnant, and the pregnancy was not carried to term;

Subclass D:  Of those Class members as defined above, those persons who became pregnant, and, the pregnancy resulted in the live birth of a baby.

## III.   <u>The Denial of Plaintiffs' Petition to Create a Multi-District Litigation.</u>

In April 2015, Plaintiffs filed a motion before the JPML to create an MDL for cases arising from the Recall.  Plaintiffs contended that the same questions of law and fact were common to all the cases and that the factual allegations in each action were virtually identical.  *See In re Qualitest Birth Control Prods. Liab. Litig.*, 38 F. Supp. 3d 1388, 1389 (U.S. Jud. Pan. Mult. Lit. 2014).  The JPML found that consolidation was not appropriate because:

[I]ndividualized facts - particularly relating to whether each plaintiff received an improperly packaged Qualitest birth control product and whether she became pregnant as a result of taking the pills in the wrong order - will predominate over the common factual issues alleged by plaintiffs.

*Id.* The same conclusion is warranted here.

## ARGUMENT

## I. Plaintiffs Cannot Satisfy the Requirements of Rule 23.

Plaintiffs bear the burden of demonstrating that a proposed class meets all four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009). Rule 23(a) permits certification of a class only if the plaintiff establishes numerosity, commonality, typicality, and adequacy. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Even if the class meets all of the requirements of Rule 23(a), certification must be denied where, as is pertinent here, common issues of law or fact predominate over individual issues and a class action is superior to other methods of resolving the putative class members' claims. Fed. R. Civ. P. 23(b).[3]

The requirements of Rule 23 are not "mere pleading standard[s]." *Dukes*, 131 S.Ct. at 2552. Plaintiffs "must affirmatively demonstrate . . . compliance with the Rule – that is, [they] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id*. at 2551 (emphasis in original). Courts must therefore conduct a "rigorous analysis" of the Rule 23

---

[3] Defendants disagree with the Plaintiffs' calculations in attempting to establish numerosity. However, because Defendants do not seek denial of certification on numerosity grounds, Defendants will not address Plaintiffs' errors in calculating the number of potential class members or pill packs that were subject to the Recall.

prerequisites and may look to the merits of Plaintiffs' claims to do so. *Id*. at 2552. For the reasons set forth below, Plaintiffs do not survive a "rigorous analysis."

### A.   The Classes Are Not Ascertainable.

In addition to the explicit Rule 23(a) requirements, Plaintiffs bear the burden of establishing the threshold requirement of ascertainability. *Karhu v. Vital Pharms., Inc.*, 2015 WL 3560722, at * 2 (11th Cir. June 9, 2015).[4]  A putative class is ascertainable if the proposed class "is adequately defined and clearly ascertainable." *Bussey v. Macon County Greyhound Park, Inc.*, 562 Fed. App'x 782, 787 (11th Cir. 2014) (internal quotation omitted).  To meet that burden, the plaintiff "must propose an administratively feasible method by which class members can be identified." *Karhu*, 2015 WL 3560722, at *3.  "'Administrative feasibility' means that identifying class members is a manageable process that does not require much, if any, individual inquiry." *Bussey*, 562 Fed. App'x at 787 (internal quotation omitted).  Here, Plaintiffs do not address ascertainability and, even if they did, it would be to no avail for reasons set forth below.

### 1.   The Putative Class and Subclasses Are Not Ascertainable.

To be a member of the putative class and any of the subclasses, an individual

---

[4] *See also Mauldin v. Wal-Mart Stores, Inc.*, No. 1:01-cv-2755-JEC, 2002 WL 2022334, at *5 (N.D. Ga. Aug. 23, 2002) ("Indeed, it is 'elementary' that a class must be adequately defined so that all members of the class are clearly ascertainable before a class action can be certified under Rule 23.").

must have "purchased and/or ingested the defectively designed, manufactured, packaged, sold, and distributed birth control pills." (D.E. No. 144 at 2). In theory, individuals could establish that they purchased and/or ingested defectively packaged birth control pills by producing a defective package. However, the class representatives do not have defective packages and it is highly unlikely that any of the other putative class members retained their used packages, particularly as the Recall took place nearly four years ago. (Deposition of Lauren Betancourt, attached hereto as Ex. D, at 105:14-25; Deposition of Angela Shepherd, attached hereto as Ex. E, at 95:16-24 (it would be "ridiculous" to expect anyone to keep a used package)). Therefore, the only direct and reliable method of determining whether a putative class member had a defective pack is unavailable.

Given that even Plaintiffs acknowledge that it is highly unlikely that any putative class member kept her used packs nearly four years after the Recall, Plaintiffs instead rely on each putative class member's claimed subjective physical symptoms as evidence of a defective product. More specifically, the only evidence upon which Plaintiffs rely to establish that they received defective packages consists of the fact that the Recall occurred combined with their claimed individual physical symptoms. (Ex. D at 188:3-16 (claiming that she received a defective package because she suffered "PMS symptoms," became pregnant, and the Recall

occurred); Ex. E at 80:17-81:16 (claiming that her "break-through bleeding" is all the evidence she has to establish that she received a defective package)).

Thus, according to Plaintiffs, to determine whether a person is a member of the class, each putative class member must establish that she suffered from unusual subjective physical symptoms around the time of the Recall, such as "PMS symptoms" or "break-through bleeding."[5]  That type of subjective method for determining class membership is "fundamentally defective" because it is not based on "operative facts or a specific incident" and instead requires answers to "highly individualized" questions.  *Newton v. Southern Wood Piedmont Co.*, 163 F.R.D. 625, 632 (S.D. Ga. 1995) (denying certification of a class of individuals exposed to chemicals who "have specifically evidenced a keratosis" because the proposed class definition "[wa]s vague and call[ed] for a subjective medical conclusion" to determine class membership).  It is also an inappropriate means for determining class membership because requiring putative class members to self-identify would violate the Defendants' due process rights.  *Karhu*, 2015 WL 3560722, at *3.

## 2.   Subclasses A and B Are Not Ascertainable.

Even if subclasses A and B were otherwise valid (which they are not), applying this same reasoning, the subclasses are not ascertainable because they

---

[5] This is especially problematic because "breakthrough bleeding" is a potential warned-of side effect of the Recalled Products.  (Ex. F at 33).

require the Court to determine whether individuals suffered "significant physical symptoms."   (D.E. No. 43 at 10-11).   Whether physical symptoms were "significant" is subjective and depends on each woman's own evaluation of her condition.  (Ex. D at 195:5-196:15; Ex. E at 96:4-19 (admitting that there is no "formula" for determining whether someone suffered significant physical symptoms and stating that she could not speak for others because "what they feel is significant may not have been significant to me")).   Because the definitions of subclasses A and B are "vague and call[] for a subjective medical conclusion," they are not ascertainable.  *Newton*, 163 F.R.D. at 632.

### 3.   The Economic Loss Class Is Not Ascertainable.

The nationwide subclass of all women who purchased defective pills, suffered no physical symptoms, and "were not reimbursed [or] compensated in any way" (D.E. No. 144 at 2; Pl. Br. at 9) is not ascertainable for reasons set forth above and because there is no administratively feasible method for determining whether an individual sought but did not receive a reimbursement.   The only method for establishing who requested and did not receive a reimbursement is through the say-so of each individual.

That method of determining class membership is barred by the Eleventh Circuit's decision in *Karhu v. Vital Pharmaceuticals, Inc.*   In *Karhu*, the plaintiff

sought to certify a class of individuals that had purchased a weight loss product. 2015 WL 3560722, at *1.  The court affirmed the district court's finding that the putative class was not ascertainable for several reasons.  First, as here, there was no method of identifying the putative class members through the defendant's records because the defendant sold its product to distributors and retailers and not directly to individuals.  *Id.*  Second, it would be improper to allow class members to come forward and identify themselves through sales receipts or affidavits because, given the small amount of money at issue, it was highly unlikely that individuals would have retained receipts or other records, making identification via receipt or other proof of purchase untenable.  *Id.*  Instead, class members would have to self-identify by submitting affidavits, which either would violate the defendant's due process rights by not "affording defendants the opportunity to challenge class membership" if the affidavits were accepted as true or would require a "series of mini-trials just to evaluate the threshold issue of which [persons] are class members," thereby defeating the purpose of class-action treatment.  *Id.* at *3.[6]

The same is true here.  The only way to determine whether putative class

---

[6] *See also Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 594 (3d Cir. 2012) ("Forcing BMW and Bridgestone to accept as true absent persons' declarations that they are members of the class, without further indicia of reliability, would have serious due process implications."); *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 689 (S.D. Fl. 2014) (finding class was not ascertainable as "self-identification through affidavit is not administratively feasible").

members requested but did not receive reimbursements is through self-identification.  The Defendants did not sell birth control pills directly to patients and, as such, did not reimburse patients directly and have no records as to who requested and did or did not receive reimbursements from pharmacies. (Deposition of Charles Mallory, attached hereto as Ex. G, at 67:22-68:7; Ex. B at 122:18-125:1).  Patients who contacted Qualitest after the Recall to inquire about reimbursements were directed to their pharmacists, told that reimbursement depended on each individual's "state's laws and the policy of [her] dispensing pharmacy," and were advised to "return [their] medication to [their] dispensing pharmacy."  (Pl. Ex. 20 at 450, 452).  The "reimbursement process for a patient would be to go to the point of sale, point of purchase, and request a reimbursement . . . ."  (Ex. G at 158:21-159:2).  How and whether an individual was reimbursed was "done on a patient-to-pharmacy basis."  (*Id.* at 67:8-12).[7]

To ascertain whether an individual suffered an economic loss and is a member of subclass A, it would be necessary to determine each pharmacy that

---

[7] At least some pharmacies have already made putative class members whole. (Ex. E at 34:18-35:3) (stating that Medco advised its patients that they should return any defective packages to Medco and that Medco would provide replacement pills).  Moreover, putative class members who had the ability to obtain replacement pills do not have a valid claim.  *See In re McNeil Consumer Healthcare*, 877 F. Supp. 2d 254, 275 (E.D. Pa. 2012) (purchasers of recalled products who were eligible for but did not seek a refund did not suffer an injury).

provided birth control pills to the individual, whether the pharmacy provided an opportunity to obtain replacement pills or a refund, and whether a putative class member took advantage of such an opportunity.  As in *Karhu*, the only way to establish all of those facts would be to have each putative class member report through affidavits.  Accepting such affidavits as true would violate the Defendants' due process rights, while questioning each individual will result in a series of mini-trials just to determine if a person is a member of the putative class.  Neither alternative is acceptable and certification of subclass A must be denied.[8]

### B.   Plaintiffs Are Not Adequate Representatives.

Rule 23(a) requires that class representatives "'will fairly and adequately protect the interests of the class.'"  *Kirkpatrick v. J. C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987) (quoting Fed. R. Civ. P. 23(a)(4)).  In assessing whether the adequacy requirement is satisfied, the Court must examine "'the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the . . . class.'"  *London v. Wal-Mart Stores, Inc*., 340 F.3d 1246,

---

[8] Even if the class were defined to include purchasers of all recalled pills, rather than just defective pills, the class nevertheless would not be ascertainable as only individuals that received defective pills would be entitled to reimbursement, and the Court would need to determine who received defective pills before certifying a class. *See Zubrick*, 2012 WL 3717749, at *4 ("[T]he reimbursement program that [Plaintiff] requests in each count of her complaint cannot redress [her] alleged injury because she was not among the purchasers of 'ineffective' Tri–Previfem pills.").

1254 (11th Cir. 2003) (quoting *Kirkpatrick*, 827 F.2d at 726).  Plaintiffs provide no

support for their conclusory statement that "[p]laintiffs here will fairly and

adequately protect the interest of the Proposed Class."  (Pl. Br. at 21).  To the

contrary, Ms. Betancourt's testimony that she does not care what other members of

the class would receive if there was ever a recovery in the law suit (Ex. D at

198:15-19) demonstrates that she lacks the requisite "forthrightness and vigor."

Plaintiffs are also not adequate representatives because their participation in

the litigation "is so minimal that they virtually [] abdicate[d] to their attorneys the

conduct of the case."  *Kirkpatrick*, 827 F.2d at 728.[9]  For example:

- Plaintiffs did not decide to file a class action and do not know who made that decision.  (Ex. D at 30:3-7; Ex. E at 75:1-21).

- Plaintiffs did not review the complaint prior to filing and Betancourt has never read the complaint in its entirety.  (Ex. D at 79:7-11; Ex. E at 31:20 - 32:15).

- Plaintiffs did not play any role in the decision to file a petition with the JPML to create an MDL and did not even know that such a petition had been filed.  (Ex. D at 209:11 - 210:15; Ex. E at 98:4-99:15).

---

[9] *See also Wein v. Master Collectors, Inc.*, No. CIV.A. 1:94-CV-2694-JOF, 1995 WL 550475, at *3-4 (N.D. Ga. Aug. 16, 1995) (adequacy requirement not met when the plaintiff had no "knowledge about the progression of the case, . . . and rested absolute authority for the prosecution of the case in her attorneys"); *Byes v. Telecheck Recovery Servs., Inc.*, 173 F.R.D. 421, 425 (E.D. La. 1997) (adequacy requirement not met when class representative had "no knowledge of the status of th[e] case[,] ha[d] not reviewed most of the pleadings filed with the court . . . [wa]s not aware of court hearings and deadlines . . . she ha[d] not seen any of the opinions issued by th[e] court").

- Shepherd has limited knowledge of case deadlines or of motions that have been filed.  (Ex. E at 103:14-23).

- Plaintiffs did not see or read Qualitest's recall notice (Ex. D at 43:19-24, 175:16-23, 180:17-181:23; Ex. E at 121:7-16), Betancourt never read the press release issued by Qualitest relating to the Recall (Ex. D at 180:17-181:23), and Shepherd does not know anything about the defendants.  (Ex. E at 77:5-23).

Because Plaintiffs have done nothing more than lend their names to a lawsuit that is controlled by class counsel, certification should be denied.

### C.   <u>Plaintiffs' Claims Are Not Typical of the Putative Class.</u>

The typicality requirement "focuses on whether Plaintiffs' claims have the same essential characteristics as the other class members." *Rivell v. Private Health Care Sys., Inc.*, No. CV106-176, 2009 WL 10318921, at *6 (S.D. Ga. Aug. 24, 2009).  "Typicality cannot be satisfied when a named plaintiff who proved his own claim would not necessarily have proved anybody else's claim." *Hillis v. Equifax Cons. Servs., Inc.*, 237 F.R.D. 491, 499 (N.D. Ga. 2006).

Here, Plaintiffs have not established typicality.  First, they admit that a sufficient nexus does not exist between their claims and those of subclasses A (economic injury only) or C (persons who became pregnant and the pregnancy was not carried to term).  Betancourt, who claims that she became pregnant and delivered a baby to term, testified that she is not a representative of either subclass A or C.  (Ex. D at 192:1-193:6, 196:16-24).  Shepherd, who did not become

pregnant, testified that she does not represent subclass A and, by definition, she cannot be representative of subclass C or D.  (Ex. E at 89:11-25).

Second, Betancourt admitted that proving her claims does nothing to establish the claims of the other putative class members.  *See Hillis*, 237 F.R.D. at 499.  Betancourt herself has failed to demonstrate that she received a defective package and, because there is a statistical chance that any woman could become pregnant while taking non-defective birth control pills, she has no means of establishing that she became pregnant as a result of a defective package.  Further, she testified that, even if a person could establish that (1) she received a defective package of pills and (2) she became pregnant, "we'd have to explore her individual circumstances to try to determine whether her pregnancy was a result of pills or some other factor."  (Ex. D at 215:17-216:7).  Each putative class member must prove her own individual claim and, as such, Plaintiffs' claims are not typical of the classes' claims.  *See Rivell*, 2009 WL 10318921, at *6.

Moreover, there are significant factual differences with respect to alleged damages.  Betancourt believes that she is entitled to greater compensation than members of subclasses A, B, or C, as none of those putative class members gave birth to a child.  (Ex. D at 197:12-23).  Both proposed representatives also believe that putative class members are entitled to different levels of compensation because

they all allegedly suffered different damages.  (Ex. D at 197:17-23; 198:15-19; Ex.

E at 97:4-19).  Thus, Plaintiffs have not established typicality.

> **D.**     **Plaintiffs Cannot Satisfy the Requirement of Commonality.**

Rule 23(a) requires Plaintiffs to establish that there are common questions of

law or fact with respect to the class.  Plaintiffs list allegedly common questions of

law and fact, but "[r]eciting these questions is not sufficient to obtain class

certification."  *Dukes*, 131 S.Ct. at 2551.  Rather, the plaintiff must establish that

the class members' claims depend on a "common contention" that is "of such a

nature that determination of its truth or falsity will resolve an issue that is central to

the validity of each one of the claims in one stroke."  *Id.* at 2551.  Commonality

requires that "a class action . . . involve issues that are susceptible to class-wide

proof."  *Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655, 666 (N.D. Ga.

2001).    Stated differently, it is not whether common questions exist, but

whether common answers to those questions exist among the class members that

are "*apt to drive the resolution of the litigation*."  *Dukes*, 131 S.Ct. at 2551

(emphasis in original) (internal quotation omitted).  *See also Heng v. Donald*, No.

CIV.A 7:08-CV-5 (HL), 2010 WL 497347, at *7 (M.D. Ga. Feb. 4, 2010) ("If the

resolution of each of the claims requires an individual inquiry of the facts

surrounding each alleged incident, commonality is not satisfied.").

Plaintiffs admit that they cannot establish commonality as to their personal injury claims: "Plaintiffs acknowledge individual proof as to the extent of the personal injury claims will be necessary as to subclasses B, C, and D." (Pl. Br. at 19). As to the economic class, all of the allegedly common issues that Plaintiffs raise can be summarized as one allegedly common issue: the fact that the Recall occurred. (*See id.* at 18-19). However, the existence of the Recall alone does nothing to resolve any class-wide issues or otherwise "drive the resolution of the litigation" as it does not prove any of the putative class members' claims. *See Hughes v. Stryker Corp.*, 423 F. App'x 878, 880 (11th Cir. 2011) (finding district court properly rejected plaintiff's attempt to rely on existence of recall alone to establish that the product was defective and caused plaintiff's injuries); *Velazquez v. Abbott Labs.*, 901 F. Supp. 2d 279, 305 (D.P.R. 2012) (same)). Each putative class member must still prove that she received a defective package and must establish the elements of a claim that entitle her to relief. Individuals that did not receive defective packages have suffered no damages and, as such, cannot establish their claims. Even if a putative class member can establish (through highly individualized proof) that she received a defective package, she must still show that she requested that her pharmacy make her whole and her pharmacy refused. Moreover, those class members that received and used defective packages without

20

suffering any injury have not suffered any damages that entitle them to compensation.  Those issues are not subject to class-wide proof.  *See Reid*, 205 F.R.D. at 666.  Rather, the resolution of each putative class member's claims "requires an individual inquiry of the facts surrounding each alleged incident" and, as such, commonality is not satisfied.  *See Heng*, 2010 WL 497347, at *7.

### E.   <u>Plaintiffs Cannot Establish Predominance.</u>

Under Rule 23(b)(3), Plaintiffs must establish that "questions of law or fact common to class members predominate over any questions affecting only individual members."  The predominance inquiry requires the Court to examine "the claims, defenses, relevant facts, and applicable substantive law . . .  to assess the degree to which resolution of the classwide issues will further each individual class member's claim against the defendant."  *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009).  Common issues do not predominate "if the addition of more plaintiffs to a class requires the presentation of significant amounts of new evidence."  *Lawson v. Life of the S. Ins. Co.*, 286 F.R.D. 689, 696 (M.D. Ga. 2012).  Here, Plaintiffs have not met their burden of establishing that common issues of law and fact predominate.

### 1.   <u>Common Issues of Law Do Not Predominate.</u>

Plaintiffs must prove through "'extensive analysis' that there are no material

variations among the law of the states for which certification is sought." *Likes v. DHL Exp.*, 288 F.R.D. 524, 538 (N.D. Ala. 2012). They bear "the burden of showing uniformity or the existence of only a small number of legal standards . . . among the laws of the fifty states," *Klay*, 382 F.3d at 1262, and must show that the "variations among the state laws are immaterial or that the application of the varied laws to the subject claims would be manageable." *Lawson*, 286 F.R.D. at 700. "In a multi-state class action, variations in state law may swamp any common issues and defeat predominance especially when there are a large number of different legal standards governing a particular claim." *Alligood v. Taurus Intern. Mfg., Inc.*, No. CV 306-003, 2009 WL 8387645, at *4 (S.D. Ga. Mar. 4, 2009). "It goes without saying that class certification is impossible where the fifty states truly establish a large number of different legal standards governing a particular claim." *Klay*, 382 F.3d at 1261.

Here, Plaintiffs make no effort to show that the laws of the fifty states are uniform. (*See* Pl. Br. at 21-25). Plaintiffs do not conduct any choice-of-law analysis for the five causes of action that they allege in the Complaint and make no attempt to show that the applicable law does not vary in meaningful ways. The omission of that critical analysis is not surprising here because under Georgia's choice-of-law rules, the widely varying laws of all fifty states would apply to class

members' claims and the "fifty states truly establish a large number of different legal standards governing a particular claim." *Klay*, 382 F.3d at 1261.

### a.     Choice of Law Issues Preclude Predominance

Choice-of law issues are "governed by the rule of *lex loci delicti*, which requires application of the substantive law of the place where the tort or wrong occurred." *McCarthy v. Yamaha Motor Mfg. Corp.*, 994 F. Supp. 2d 1329, 1332 (N.D. Ga. 2014).[10]  The place of the wrong is the place where the injury sustained was suffered.  *Id.*[11]  However, Georgia limits the application of foreign law to statutes and decisions construing those statutes.  *Id.*  "'When no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law.'"  *Id.* (quoting *Frank Briscoe Co. v. Ga. Sprinkler Co.*, 713 F.2d 1500, 1503 (11th Cir. 1983)).  Before doing so, however, the Court must determine that application of Georgia law does not violate due process or contravene Georgia public policy.  *Auto. Leasing Corp. v. Mahindra & Mahindra, Ltd.*, 2014 WL 988871, at *4 (N.D. Ga. March 14, 2014).

---

[10] Although "there is no consistent approach to determining how warranty claims should be interpreted," because Plaintiffs' claims are based on injuries sustained as a result of the purchase and use of allegedly defective Recalled Products, it is proper to use the rule of *lex loci delicti* for the warranty claim. *Andrews v. RAM Med., Inc.*, No. 7:11-CV-147 HL, 2012 WL 1358495, at *2 (M.D. Ga. Apr. 19, 2012).

[11] Plaintiffs concede this point in their cursory and incorrect analysis of damages available in "wrongful conception" cases in 25 states.  (Pl. Br. at 23-24).

Under Georgia law -- and other relevant states' laws -- claims for breach of warranty, [12] consumer fraud, [13] and strict liability [14] are governed by statute. Accordingly, if a class were certified, this Court would have to apply the law of 50 different states to these claims.   Regarding Plaintiffs' negligence and unjust enrichment claims, although those claims are governed by common law in Georgia, statutes govern those claims in other states.  Accordingly, the law of other states will apply to the negligence and unjust enrichment claims of many of the class members.  Even for out-of-state putative class members injured in states where negligence and unjust enrichment claims are governed by common law, the Court would have to determine for each class member whether application of Georgia law is consistent with due process – *i.e.*, whether Georgia has "'significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff class, contacts creating state interests, in order to ensure that the choice of Georgia law is not arbitrary or unfair.'"  *Auto. Leasing Corp.*, 2014 WL 988871, at *4 (denying certification because "the Court would have to conduct differing due process analyses for many of the approximately 340 potential class members").  Plaintiffs have not made any proposal as to how

---

[12] O.C.G.A. § 11-2-101, *et seq.*
[13] O.C.G.A. § 10-1-370, *et seq.*
[14] O.C.G.A. § 51-1-11.1, *et seq.*

the Court could analyze choice of law issues in a manageable or workable way.

Moreover, Plaintiffs seek damages for "wrongful conception" and identify six states that they claim "allow damages for the cost of raising a child through the age of majority."   (Pl. Br. at 24). [15]   However, Georgia does not allow such recovery due to its own public policy concerns.   *Fulton-DeKalb Hosp. Auth. v. Graves*, 314 S.E.2d 653 (Ga. 1984).   Accordingly, for class members who live in a state that might permit recovery of the cost of raising a child, this Court would need to analyze whether Georgia's public policy exception precludes application of that foreign law.   This complicated analysis demonstrates the inferiority of class-wide resolution.   *See Auto. Leasing Corp.*, 2014 WL 988871, at *4.

### b.   Strict Liability and Negligence Law Varies Materially.

Federal courts consistently deny certification of classes asserting personal injury claims based on negligence and strict liability theories because state laws governing such claims are dissimilar and discordant.   (*See* n. 2, *supra*).   Many states have enacted products liability acts that encompass claims for strict liability. [16]   Moreover, several states' product liability acts subsume negligence

---

[15] Plaintiffs incorrectly state that New Mexico permits damages for the cost of raising a child in a case such as this.   *Provencio v. Wenrich*, 261 P.3d 1089, 1096-97 (N.M. 2011) (limiting a plaintiff's ability to recover such damages to medical malpractice cases involving a breach of the duty to inform).

[16] *See* Ariz. Rev. Stat. § 12-681, *et seq.* (2007); Ark. Code Ann. § 16-116-101, *et*

claims asserted in product liability actions.[17]  Differences in affirmative defenses

likewise exist.  For example, contributory negligence and assumption of risk are

complete defenses to products claims in some states.  *See Castano v. Am. Tobacco

Co.*, 84 F.3d 734, 745 n.15 (5th Cir. 1996) (citing S.C. Code Ann Sec. 15-73-20

(1976)); Colo. Rev. Stat. sec. 13-21-111.7 (1986).  As such, if the putative classes

were certified, the Court would be faced with applying dozens of different legal

standards to class claims.

### c.    Breach of Warranty Law Is Not Uniform.

All jurisdictions except Louisiana have adopted Article 2 of the Uniform

Commercial Code ("UCC").  However, "the Uniform Commercial Code is not

---

*seq.* (2008); Colo. Rev. Stat. Ann. §§ 13-21-401-406 (2007); Ga. Code Ann. § 51-1-11.1 (2007); Idaho Code Ann. §§ 6-1401-1410 (2007); Ind. Code Ann. § 34-20-1-1, et seq. (2007); Kan. Stat. Ann. § 60-3301, *et seq.* (2006); Ky. Rev. Stat. Ann.§ 411.300, et seq. (2008); Me. Rev. Stat. Ann. tit. 14, § 221 (2007); Miss. Code Ann. § 11-1-63 (2007); Mo. Rev. Stat. § 537.760 (2005); Mont. Code Ann. § 27-1-719 (2007); Neb. Rev. Stat. § 25-21, 180-182 (2007); N.J. Stat. § 2A:58C-1 through 58C-11 (2007); N.C. Gen. Stat. § 998-1.1 (2007); N.D. Cent. Code § 28-01.3, *et seq.* (2007); Ohio Rev. Code Ann. §§ 2307.71-2307.81 (2008); Or. Rev. Stat. §§ 30.900(1)-(3) (2005); S.C. Code Ann. § 15-73-10, -30 (2006); Tenn. Code Ann. § 29-28-101, et seq. (2007); Tex. Civ. Prac. & Rem. Code Ann. §§ 82.001-82.006 (2007); Utah Code Ann. §§ 78-15-1, *et seq*. (2007); Wash. Rev. Code §§ 7.72.010-.060, et seq. (2007).

[17] *See Goode v. Tamko Asphalt Prods., Inc.*, 783 S.W.2d 184, 187 (Tenn. 1989) (the Tennessee Products Liability Act subsumes negligence claims); *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1251 (5th Cir. 1997) (same as to Louisiana); *Washington Water Power Co. v. Graybar Elec. Co.*, 774 P.2d 1199, 1203-04 (Wash. 1989) (same as to Washington); *Winslow v. Lewis-Shepard, Inc.*, 562 A.2d 517 (Conn. 1989) (same as to Connecticut).

uniform."  J. White and R. Summers, *Uniform Commercial Code* 7 (2d ed. 1980).

Many federal courts have recognized that there are numerous variations in the

substantive law of express warranties and that genuine conflicts exist among those

laws.  *See, e.g.*, *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 726 (5th Cir. 2007)); *In

re Hitachi Television Optical Block Cases*, 2011 WL 9403, *6 (S.D. Cal. Jan. 3,

2011).  Those differences warrant denial of certification for warranty claims.  *See,

e.g.*, *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 459-60 (D.N.J. 1998) (denying class

certification after noting that no federal court had ever tried a class action

involving the law of all 50 states).[18]

Here, Plaintiffs fail to address any of the variations in warranty law.  The

differences, however, are significant:

- There is a split of authority as to whether a buyer must show reliance on a representation for it be considered part of the "basis of the bargain."  *See Cole*, 484 F.3d at 726-28.

- State law differs in whether they require proof of privity.  *Karhu v. Vital Pharm., Inc.*, No. 13-60768-CIV, 2014 WL 815253, at *8 (S.D. Fla. Mar. 3, 2014), *aff'd*, 2015 WL 3560722 (11th Cir. June 9, 2015).

- Buyers must give a seller notice of the alleged breach "within a reasonable

---

[18] *See also Walsh v. Ford Motor Co.*, 130 F.R.D. 260, 271-77 (D.D.C. 1990) (denying certification after devoting six pages to describing differences among the express and implied warranty law in the fifty states); *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360, 369 (E.D. La. 1997) (denying certification); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 194 F.R.D. 484 (D.N.J. 2000) (same).

time," but state law varies on what constitutes reasonable notice and the identity of the party to whom notice should be given.[19]

Because warranty law is far from uniform, individual issues of law predominate.

### d.    State Consumer Protection Statutes Vary Materially.

State consumer fraud laws differ with regard to several key issues, namely, "the type of prohibited conduct, proof of injury-in-fact, available remedies, scienter, statute of limitations, and reliance."  *Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 585 (N.D. Ill. 2008), *aff'd*, 612 F.3d 932 (7th Cir. 2010).[20]  For example, state laws differ as to whether the plaintiff must establish reliance as an element of a consumer fraud claim[21] and whether to the plaintiff must prove the defendant acted

---

[19] *See Palmer v. A.H. Robins Co.*, 684 P.2d 197 (Colo. 1984) (notification of intermediate seller will suffice); *Firestone Tire & Rubber Co. v. Cannon*, 452 A.2d 192 (Md. App. 1982) (must notify immediate seller only), *aff'd* 456 A.2d 930 (Md. 1983); *Parker v. Bell Ford, Inc.*, 425 So.2d 1101 (Ala. 1983) (must notify manufacturer).

[20] *See also In re McDonald's French Fries Litig.*, 257 F.R.D. 669, 673-74 (N.D. Ill. 2009) (explaining that courts "[o]verwhelmingly" find conflicts in consumer protection laws); *In re HP Inket Printer Litig.*, 2008 WL 2949265, *7 (N.D. Cal. July 25, 2008) (acknowledging, with respect to state consumer protection and deceptive trade practice laws, "the many differences among states with respect to, for example, statutes of limitations, scienter requirements, and calculation of damages"); *In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 147 (S.D.N.Y. 2008) (stating differences in state consumer fraud as to issues of reliance, scienter, burden of proof, availability of class actions and notice).

[21] *Compare* Tex. Bus. & Com. Code § 17.50(a)(1)(B) (permitting suit when the consumer relied on a false, misleading, or deceptive act or practice to the consumer's detriment); Wyo. Stat. Ann. § 40-12-108(a) ("A person relying upon an uncured unlawful deceptive trade practice may bring an action under this act for

with knowledge or intent.[22]   Those differences have caused courts repeatedly to deny certification of consumer fraud claims.   *See, e.g., In re McDonald's French Fries Litig.*, 257 F.R.D. at 673-74 (variations in state consumer protection law precluded class certification).

**e.      Unjust Enrichment Law Is Not Uniform.**

Unlike in Georgia, some states have enacted statutes governing claims for unjust enrichment.   *See e.g.,* La. Civ. Code Ann. art 2298, *et seq*. (2007). California does not recognize claims for unjust enrichment at all.   *Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1174 (E.D. Ca. 2007).   Georgia plainly does not apply its common law to a cause of action another state has statutorily created, and it cannot apply its common law to provide a cause of action not recognized by the claimant's state of residence.   Accordingly, individual issues of law

---

the damages he has actually suffered as a consumer as a result of such unlawful deceptive trade practice.") *with* Kan. Stat. Ann. § 50-626(b) (a seller may commit deceptive act "whether or not any consumer has in fact been misled"); N.J. Stat. Ann. § 56:8-2 (a seller may commit deceptive act "whether or not any person has in fact been misled, deceived or damaged"); *S&R Assocs., LP v. Shell Oil, Inc.*, 725 A.2d 431, 440 (Del. Super. Ct. 1998) (actual reliance is not an element of consumer fraud).

[22] *Compare* Colo. Rev. Stat. Ann. § 6-1-105(1)(u) (requiring "inten[t]") *and Dodson v. U-Needa Self Storage, LLC*, 96 P.3d 667, 671 (Kan. Ct. App. 2004) (defendant must act "knowingly or with reason to know") *with Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 897 (N.Y. 1999) (intent to defraud is not an element of consumer fraud); *Kessler v. Fanning*, 953 S.W.2d 515, 521 (Tex. App. 1997) (need not prove seller's knowledge of a statement's falsity).

29

predominate as to Plaintiffs' unjust enrichment claim.

### 2.   <u>Common Issues of Fact Do Not Predominate.</u>

In addition to conflicts and variations in state law, class certification is inappropriate because common issues of fact do not predominate over individual ones.  Where plaintiffs must "introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)."  *Klay*, 382 F.3d at 1255.  This is particularly true where, as here, "no one set of operative facts establishes liability" and "no single proximate cause applies to each potential class member."  *Ilhardt v. A.O. Smith Corp.*, 168 F.R.D. 613, 619 (S.D. Ohio 1996).  The unique factual issues raised by Plaintiffs' claims vastly outnumber any issues that could even arguably be proven through common evidence.

### a.   **Individual Issues Exist as to Whether Putative Members <u>Received Defective Packages.</u>**

Whether an individual received a defective package is a fact-sensitive, individual inquiry that must be performed for each and every putative class member.  (*See* discussion *supra* at 10-12).  As it is highly unlikely that any putative class members kept their used packages, the Court will be required to evaluate the subjective physical symptoms of each class member, such as moodiness and

break-through bleeding, to determine if she overcomes the one in ten thousand chance that she received a defective package.

### b. Individual Issues Exist as to the Cause of Economic Harm.

Contrary to Plaintiffs' contention, that the Recall occurred standing alone is insufficient to establish that the putative class members are entitled to relief, even for economic-only losses. *See Hughes*, 423 F. App'x at 880 (finding district court properly rejected plaintiff's attempt to rely on existence of recall alone to establish that the product used by plaintiff was defective and caused his injuries); *Velazquez*, 901 F. Supp. 2d at 305 (same)). As stated by the Seventh Circuit, "[d]riving carelessly is not a tort and neither is the sale of defective product. The products-liability tort occurs when the defect in the design or manufacture of the product *causes a harm* . . . ." *Fogel v. Zell*, 221 F.3d 955, 960 (7th Cir. 2000) (emphasis added). Putative class members must still establish the elements of a cause of action before they can be entitled to relief. Here, individual issues exist as to whether members of subclass A attempted to obtain refunds or replacement pills whether they were refused. Individual issues also exist as to whether putative members used the pills but suffered no physical symptoms.

### c. Individual Issues Exist as to Whether an Individual's Physical Symptoms (Including Pregnancy) Were Caused by <u>the Use of a Defective Package.</u>

As Plaintiffs admit, oral contraceptives are not 100% effective at preventing pregnancy, even if taken perfectly. The package inserts include such a warning:

> When [oral contraceptives] are taken correcting correctly without missing any pills, the chance of becoming pregnant is 1% (1 pregnancy per 100 women per year of use). Typical failure rates are approximately 5% per year including women who do not always take the pills exactly as directed. The chance of becoming pregnant increases with each missed pill during a menstrual cycle.

(Ex. F at 33). Thus, even if every putative class member took her birth control perfectly, an individual issue would exist as to whether her pregnancy or other alleged injury was caused by a defective package or the 1-5% failure rate.

An individual issue also exists as to whether putative class members took their birth control at the same exact time every day as directed in the Package Insert. (*Id.*). For example, Betancourt testified that she took her pills at the same time every day and never missed a pill, but acknowledged that other women may not. (Ex. D at 145:8-147:16). She further acknowledged that the only way to determine if putative class members took their pills perfectly would be to question each and every individual. (*Id.* at 148:21-150:20). Shepherd admitted that she did not take her pills perfectly. (Ex. E at 53:19-24).

In addition, because birth control pills (even with perfect use) may be less

effective when taken with other drugs (Ex. F at 34), each putative class member's medical history must be evaluated to determine whether her physical injuries were caused by defective pills.

### 3. Individualized Damage Issues Predominate.

The putative class members' alleged damages present highly individualized issues that preclude certification of all of the proposed subclasses as set forth in the Supreme Court's decision in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013). Despite its importance, Plaintiffs fail to address *Comcast*. In *Comcast*, the Supreme Court made clear that a district court must engage in a rigorous analysis on the issue of classwide damages before certifying damages for class treatment. Absent a viable classwide damages model, the Court held that "[q]uestions of individual damage calculations [would] inevitably overwhelm questions common to the class," defeating predominance and rendering classwide treatment improper. *Id.*[23] Here, assuming the Plaintiffs could surmount their liability hurdles (which they cannot), the individualized issues associated with calculating class members' damages for personal injury and economic injury necessitates myriad individual inquiries, making class treatment inappropriate.

---

[23] *See also Bussey*, 562 F. App'x at 790-91 (reversing and remanding class certification because the district court "failed to conduct [a] 'rigorous analysis'" of "whether calculation of the class members' damages would necessitate" individual inquiries, as required under *Comcast*).

### a.     Plaintiffs Have Not Presented a Damages Model.

An immediate impact of *Comcast* is that Plaintiffs bear the initial burden to demonstrate how they will determine damages if they prevail on liability.  The rule is simple: "[n]o damages model, no predominance, no class certification."  *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 253 (D.C. Cir. 2013). Plaintiffs' failure to offer a model for computing damages is fatal to their motion.[24]

### b.     Individual Damages Issues Predominate in the Proposed Personal Injury Subclasses.

The predominance of individualized damages issues precludes certification of subclasses B, C, and D.  For those subclasses, Plaintiffs seek so-called "base benefits" in the form of "damages for pain and suffering, medical expenses, lost income, and loss of consortium," and for class members who reside in states that allow it "damages for the cost of raising a child through the age of majority."  (Pl. Br. at 24).  The individualized issues associated with assessing damages for those personal injuries dwarf common issues, if any.

---

[24] *See Randolph*, 303 F.R.D. at 696, 697 (denying certification where plaintiff "made no attempt to present the Court with an example or summary of the model to be applied"); *Rahman v. Mott's LLP*, No. 13-cv-03482-SI, 2014 WL 6815779, at *8 (N.D. Cal. Dec. 3, 2014) (denying certification where the plaintiff "introduced no evidence showing that restitution can "feasibly and efficiently be calculated once the common liability questions are adjudicated'") (citation omitted); *In re POM Wonderful LLC*, MDL No. 2199, 2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) (decertifying class where expert failed to offer plausible damages model).

Assessing damages for putative class members who Plaintiffs claim are entitled to the cost of raising a child through the age of majority presents even more individualized issues.  In nearly all of the states that arguably allow for such recovery, the measure of those "damages" is offset by the benefits conferred on the parents by reason of their relationship to the child.[25]  Therefore, determining damages for class members who live in states that permit recovery for some child raising costs would require individual mini-trials so that a fact-finder could determine the benefits that a parent receives from raising their child.  Plainly, individual issues predominate with respect to the personal injury damages.

### c.   Individual Damages Issues Predominate in the Proposed Economic Injury subclass.

Plaintiffs have had nearly four years to articulate a theory of damages for the economic injury-only subclass (subclass A) but instead shift between two different damages theories.  First, they contend that "[e]ach proposed class member has suffered virtually identical damages consisting of a commercial loss in the amount of the difference between the value of the drug, as promised by Defendant, and its actual value as marketed."  (Pl. Br. at 12).  Plaintiffs later abandon the diminution

---

[25] *See Univ. of Arizona Health Sciences Ctr. v. Superior Court of State in & for Maricopa County*, 667 P.2d 1294, 1301 (Ariz. 1983); *Stills v. Gratton*, 55 Cal. App. 3d 698, 709 (Ct. App. 1976); *Burke v. Rivo*, 551 N.E.2d 1, 6 (Mass. 1990); *Sherlock v. Stillwater Clinic*, 260 N.W.2d 169, 170-71 (Minn. 1977).

in value theory and instead purport to seek full reimbursement "of monies paid for the recalled birth control pills." (*Id.* at 23).  Under either theory, individual economic damages are not "virtually identical" as Plaintiffs contend.  (*Id.* at 12).

Under the diminution in value approach, individualized assessments would be necessary to determine the "actual value" of the Recalled Products received and used by each class member and whether she "received what she paid for." (*Id.* at 10, 12).  As with the personal injury subclasses, that analysis requires that a determination be made for each class member on whether she received a defective package.  It also requires the Court to determine each class member's level of "commercial disappointment." (*Id.* at 10).  Quantifying an individual's level of disappointment is the epitome of an individualized issue.  *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 69 (S.D.N.Y. 2002) ("[W]hether an individual class member got his or her money's worth is inherently individual.").

The problems presented by the proposed economic damages-only class cannot be cured by considering full reimbursement of amounts paid for a Recalled Product.  Even Plaintiffs concede that "individualized proof" is required to determine "how much individual members paid for the recalled birth control pills and how much they are due to be reimbursed with damages." (Pl. Br. at 22).  Plaintiffs suggest that "[t]his can be calculated from the records of the parties," but

provide no evidentiary support for that incorrect statement.  (*Id.*).  As the named Plaintiffs themselves conceded, they have no way of knowing how much each individual class member paid for her birth control and the amounts would differ. (Ex. D at 154:1-155:18).  They therefore cannot demonstrate to the Court whether it is even possible to develop a manageable way to determine what each putative class member paid for a Recalled Product.  Even if that were possible, individualized inquiries would still be required to determine whether any individual class member is entitled to reimbursement as some class members may have been reimbursed by their own pharmacies or provided with a replacement package of pills.  Moreover, a class member that used defective pills but suffered no injury has no claim and is not entitled to relief.  (*See* discussion *supra* at 34).

Because Plaintiffs have failed to provide "sufficient evidence of a viable damages model capable of estimating damages on a class-wide basis as is required by *Comcast*," their motion must be denied.  *Randolph*, 303 F.R.D. at 696.

**F.**    **Plaintiffs Cannot Satisfy the Superiority Requirement.**

"The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication."  *In re Prudential Ins. Co. America Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998).  A class action cannot simply be

as good as another method of adjudication, it must "represent the *best* available method for the fair and efficient" adjudication of the matter. *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 194 (3d Cir. 2001) (emphasis added). Class actions are designed to allow for the "vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court." *Amchem*, 521 U.S. at 617 (internal quotation omitted). To that end, the Court must consider "the interest of the members of the class in individually controlling the prosecution or defense of separate actions." *Id.* at 616. Where putative class members have sufficient incentive to file suit, a class action is not superior. *Walter v. Hughes Communications*, No. 09-2136, 2011 WL 2650711, *10 (N.D. Cal. July 6, 2011). Here, putative class members have sufficient incentive to sue as many already have. (*See* Ex. H). Accordingly, class treatment is not superior to other methods of resolving the putative class members' claims.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion for class certification.

Respectfully submitted,

DATED:    July 22, 2015         /s/ Richard B. North, Jr.
                                **NELSON MULLINS RILEY &**
                                **SCARBOROUGH LLP**
                                Richard B. North, Jr.

38

GA State Bar No. 545599
richard.north@nelsonmullins.com
Brandee J. Kowalzyk
GA State Bar. No. 142328
brandee.kowalzyk@nelsonmullins.com
201 17th Street NW, Suite 1700
Atlanta, GA 30363
T: 404-322-6155
F: 404-322-6050

**K&L GATES LLP**
Christopher R. Carton
(Admitted *pro hac vice*)
christopher.carton@klgates.com
Loly G. Tor (Admitted *pro hac vice*)
loly.tor@klgates.com
One Newark Center, 10th Fl.
Newark, NJ 07102
T: 973-848-4000
F: 973-848-4001

*Attorneys for Patheon Inc.*

**GREENBERG TRAURIG, LLP**
Lori G. Cohen
Georgia Bar No. 174455
R. Clifton Merrell
Georgia Bar No. 593903
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
T: 678-553-2100
F: 678-553-2212

**KAYE SCHOLER LLP**
Pamela J. Yates (Admitted *pro hac vice*)
1999 Avenue of the Stars, Suite 1600
Los Angeles, CA 90067
Alan E. Rothman (Admitted *pro hac vice*)

Angela R. Vicari (Admitted *pro hac vice*)
250 W. 55th Street
New York, NY 10019-9710

*Counsel for Vintage Pharmaceuticals, LLC dba Qualitest Pharmaceuticals, Endo Pharmaceuticals Inc., and Endo Health* Solutions Inc. fka Endo Pharmaceutical Holdings Inc.

## LR 5.1C CERTIFICATION

Counsel hereby certifies that the foregoing was prepared in Times New Roman, 14-point font, in accordance with LR 5.1C.

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/Richard B. North, Jr.
Richard B. North, Jr.

40