## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| ANGELA SHEPHERD and LAUREN BETANCOURT, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| VINTAGE PHARMACEUTICALS, LLC, ENDO PHARMACEUTICALS, INC., ENDO PHARMACEUTICALS HOLDINGS, INC., PATHEON INC., JOHN DOE COMPANY I, JOHN DOE COMPANY II, JOHN DOE COMPANY III, JOHN DOE COMPANY IV, JOHN DOE COMPANY V, JOHN DOE COMPANY VI, and JOHN DOE COMPANY VII, | : : : : : : : : | CIVIL ACTION FILE NO. 1:11-CV-3805-SCJ |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

This matter is before the Court on Plaintiffs' motion for class certification [144]; Defendants' motion for oral argument [149]; and Plaintiffs' motion for leave to file excess pages [150].

## I.    Background

### A.    Procedural History

This proposed class action products liability case was filed by Plaintiff Lauren Betancourt in the State Court of Cobb County on September 30, 2011, seeking to recover damages for injuries arising from her purchase and consumption of

allegedly defective birth control pills.  The case was removed to this Court as a putative class action having federal diversity under the Class Action Fairness Act.

Plaintiffs, Lauren Betancourt and Angela Shepherd, filed a Third Amended Complaint against Defendants, Endo Pharmaceuticals, Inc., Endo Pharmaceuticals Holdings, Inc., Vintage Pharmaceuticals, LLC, and Patheon, Inc. on May 23, 2012. Doc. No. [43].  In their Third Amended Complaint, Plaintiffs allege that Defendants "designed, manufactured, packaged, sold, and distributed birth control pills," ("the Recalled Products") that were "defectively and dangerously designed, manufactured, packaged, sold, and distributed."  See Doc. No. [43], ¶¶ 10-11. Plaintiffs state the Recalled Products "purchased by the Plaintiffs were packaged such that select blisters found inside the pill box were rotated 180 degrees within the card, reversing the weekly tablet orientation" and as a "result of the packaging error, the daily regimen for the BIRTH CONTROL PILLS left women without adequate contraception and at risk for unwanted pregnancy." Id., ¶ 12.

The parties engaged in mediation in an attempt to settle the case.  Those efforts were unsuccessful and on December 17, 2014, the Court denied Defendant Patheon's motion to dismiss for failure to properly serve and lack of personal jurisdiction.  See Doc. No. [126].  The Court previously determined that discovery in this matter would be bifurcated into class action and merits issues.  See Doc. No.

AO 72A
(Rev.8/82)

[31].  The parties engaged in discovery on the class issues and Plaintiffs filed the instant motion for class certification.

During the time this action has been pending, Plaintiffs also moved before the United States Judicial Panel on Multidistrict Litigation for centralization of the case. See In re Qualitest Birth Control Products Liability Litigation, 38 F. Supp. 3d 1388 (J.P.M.L. 2014).  The Panel declined to centralize the cases because it found that "individualized facts – particularly relating to whether each plaintiff received an improperly packaged Qualitest birth control product and whether she became pregnant as a result of taking the pills in the wrong order – will predominate over the common factual issues alleged by plaintiffs." Id. at 1389.

**B.     Facts**

In September 2011, Defendants issued a nationwide recall of eight different oral contraceptive products packaged by Patheon for Qualitest, a company which distributes pills to distributors and pharmacies.  The recall was initiated when a pharmacist in Iowa returned three blister packs of Cyclafem 7/7/7 because one of the packs had been packaged upside down obscuring the lot number and expiration date.  The Iowa package is the only known defective package received by a consumer.  See Rajroop Depo., pp. 125-28.

3

Shortly after receiving notification from the Iowa pharmacist, Defendants issued a Recall Notice which stated that "select blister [packages] were rotated 180 degrees within the card, reversing the weekly tablet orientation and making the lot number and expiry date no longer visible." Of the 507,966 blister packs that were returned in the recall, only 53 were improperly packaged in the reverse order. Significantly, therefore, this is not a case where a single defect is contained within every identical product. Rather, the record shows the possibility that only a very small number of blister packs manufactured incorrectly might have been received by consumers.

When individual consumers called to ask about the recall and reimbursements, they were directed to their pharmacist. The reimbursement issue was handled on a pharmacist-by-pharmacist basis. See Mallory Depo., at 67-68, 158-59.

Plaintiffs' counsel avers that in addition to the two named Plaintiffs, they represent 117 women, 113 of whom became pregnant, 94 of whom carried the babies to term, 17 women who did not carry the babies to term, and 4 who did not become pregnant. Counsel notes that these women live in 26 of the 50 states.

Plaintiffs assert claims of (1) strict liability, (2) negligence, (3) breach of express and implied warranty, (4) violation of state consumer protection statutes, and (5) unjust enrichment. Plaintiffs propose a nationwide class with four subclasses:

> Class: All persons within the United States of America, who, within the applicable limitations period, purchased and/or ingested the defectively designed, manufactured, packaged, sold, and distributed birth control pills with the trademark names Cyclafem 1/35, Cyclafem 7/7/7, Emoquette, Gildess FE 1.5/30, Gildess FE 1/20, Orsythia, Previfem, and Tri-Previfem.
>
> > Subclass A: Of those Class members as defined above, those persons who ingested none of the birth control pills and/or ingested the birth control pills and experienced no significant physical symptoms;
> >
> > Subclass B: Of those Class members as defined above, those persons who experienced significant physical symptoms;
> >
> > Subclass C: Of those Class members as defined above, those persons who became pregnant, and the pregnancy was not carried to term;
> >
> > Subclass D: Of those Class members as defined above, those persons who became pregnant; and, the pregnancy resulted in the live birth of a baby.

## C.    Contentions

As to the general class, Plaintiffs contend they sufficiently proffered evidence on numerosity, commonality, typicality, and predominance. Plaintiffs argue that

5

courts have approved class actions brought against drug manufacturers by persons who did not suffer personal injuries, but who contended that the drug was defective and the plaintiffs did not receive what they paid for. Although Plaintiffs acknowledge they face a "heavier burden" with respect to the sub-classes alleging personal injuries, Plaintiffs nonetheless assert that class actions can also proceed on these theories.[1]

Defendants respond that Plaintiffs cannot satisfy the requirements of Rule 23 because the class and subclasses are not "ascertainable." Defendants further contend that Plaintiffs are not adequate class representatives because they have not kept informed of the litigation and have not directed and guided counsel. Defendants argue that Plaintiffs' claims are not typical and Plaintiffs cannot satisfy the commonality requirement. As to Rule 23(b) issues, Defendants aver that Plaintiffs cannot establish predominance because there are complex choice of law questions with respect to all of Plaintiffs' state law claims. Defendants argue that common issues of fact do not predominate, while individualized damage issues do predominate and under these circumstances a class action is not the superior method of adjudication.

---

[1]The Court GRANTS Plaintiffs' motion for leave to file excess pages [150].

6

## II.    Discussion

"A class action may be maintained only when it satisfies all the requirements of Fed. R. Civ. P. 23(a) and at least one of the alternative requirements of Rule 23(b)." Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1005 (11th Cir. 1997) (footnotes omitted).  Rule 23(a) provides:

> Prerequisites to a Class Action.  One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Id., Rule 23(a).  These requirements are generally referred to as "numerosity," "commonality," "typicality," and "adequacy."  For the purposes of this motion, Defendants challenge all but numerosity.

Plaintiffs must also satisfy at least one of the three requirements under Rule 23(b).  Plaintiffs, here, appear to be pursuing the third alternative in Rule 23(b)(3) which permits certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Because a class action is an "exception to the usual rule" that litigation is conducted on behalf of the named parties only, <u>Comcast Corp. v. Behrend</u>, ___ U.S. ___, ___, 133 S. Ct. 1426, 1432 (2013), the party seeking to certify a class "must affirmatively demonstrate his compliance" with Rule 23. <u>See Wal-Mart Stores, Inc. v. Dukes</u>, ___ U.S. ____, ____, 131 S. Ct. 2541, 2551-52 (2011). The analysis of the class certification motion is not "a mere pleading standard" but rather involves "rigorous analysis" of the elements of Rule 23(a) and (b). <u>Id.</u> at 2551.

As Defendants point out, there are a myriad of reasons why this case is not suitable for class resolution. The Court selects the most pressing of those reasons to discuss, but that does not diminish the merit of Defendants' other arguments. The Court also finds that Plaintiffs' motion for class certification does not meet the standard of a "rigorous analysis." Although the motion goes into detail about the recall, it fails to address many of the required elements of proving suitability of class certification and relies primarily on generalities about the circumstances involved.[2]

---

[2]It is not sufficient to simply aver, for example, that other courts have certified class actions brought against drug manufacturers by persons who did not suffer personal injuries.

### A.    Ascertainable

In <u>Little v. T-Mobile USA, Inc.</u>, the Eleventh Circuit held that "[b]efore a district court may grant a motion for class certification, a plaintiff seeking to demonstrate a proposed class must establish that the proposed class is 'adequately defined and clearly ascertainable.'" 691 F.3d 1302, 1304 (11th Cir. 2012) (quoting <u>DeBrekaecker v. Short</u>, 433 F.2d 733, 734 (5th Cir. 1970)).  <u>See also</u> <u>Karhu v. Vital Pharmaceuticals, Inc.</u>, ___ F. App'x ___, 2015 WL 3560722 (11th Cir. June 9, 2015); <u>Bussey v. Macon County Greyhound Park, Inc.</u>, 562 F. App'x 782, 787 (11th Cir. 2014); <u>Walewski v. Zenimax Media, Inc.</u>, 502 F. App'x 857, 861 (11th Cir. 2012).

The Third and Fifth Circuits have also applied an "ascertainability" requirement.  <u>See</u>, <u>e.g.</u>, <u>In re Deepwater Horizon</u>, 739 F.3d 790, 821 (5th Cir. 2014); <u>Marcus v. BMW of North America</u>, 687 F.3d 583, 596 (3d Cir. 2012).  The Fourth Circuit, although not requiring an "ascertainability" determination to occur prior to considering the Rule 23(a) and (b) elements, finds that there must be an "objective standard" to determine whether an individual is a member of the class. <u>See</u>, <u>e.g.</u>, <u>EQT Prod. Co. v. Adair</u>, 764 F.3d 347, 358-60 (4th Cir. 2014).  Other courts of appeal have combined discussions of ascertainability with numerosity. <u>See</u>, <u>e.g.</u>, <u>Colorado Cross Disability Coal. v. Abercrombie & Fitch Co.</u>, 765 F.3d 1205, 1215 (10th Cir. 2014).    Finally, the Court does recognize that the topic of

9

"ascertainability" is not without its critics. See, e.g., Mullins v. Direct Digital, LLC, 795 F.3d 654 (7th Cir. 2015).  Of course, Eleventh Circuit precedent directs the Court's inquiry here.

A proposed class must be "adequately defined and clearly ascertainable. Bussey, 562 F. App'x at 787.  A class is identifiable if its "members can be ascertained by reference to objective criteria." Id. (quotation and citation omitted). The analysis of such objective criteria should also be administratively feasible. Id. "'Administrative feasibility' means that identifying class members is a manageable process that does not require much, if any, individual inquiry." Id.

Defendants assert that the members of the proposed class and subclasses are not "ascertainable" because there is no way of knowing which consumers purchased or digested birth control pills that had been improperly packaged. The Court has numerous concerns with the manner in which Plaintiffs have pled their class certification issues.  As an initial matter, Plaintiffs have not proffered any means of identifying class members. Defendants' records show only products sold to distributors and retailers, but not to individuals.  Potential plaintiffs are unlikely to have retained sales receipts because of the small amount of money involved in the purchase.  Thus, the only means of identifying purchasers would be through self-identification affidavits.   However, some courts have held that "self-

10

identification" is not proper and have even gone so far as to describe this as a potential due process issue.  In <u>Marcus</u>, for example, the proposed plaintiff class would be made up of individuals who owned or leased certain BMW cars with "run-flat tires" which had gone flat and been replaced.  <u>Id.</u> at 592.  The Court of Appeals reversed the district court's certification of the class and remanded for the district court to set forth a more clearly defined class.  The court instructed that on remand:

> the District Court – adjusting the class definition as needed – must resolve the critical issue of whether the defendants' records can ascertain class members and, if not, whether there is a reliable, administratively feasible alternative.  We caution, however, against approving a method that would amount to no more than ascertaining by potential class members' say so.  For example, simply having potential class members submit affidavits that their [tires] have gone flat and been replaced may not be proper or just. . . . Forcing BMW and Bridgestone to accept as true absent persons' declarations that they are members of the class, without further indicia of reliability, would have serious due process implications.

<u>Id.</u> at 594 (quotation and citation omitted).

Even if self-identification were an acceptable means of determining the class, Plaintiffs have not proffered any plan for how to address issues of ascertainability beyond contending that Plaintiffs could submit affidavits that they purchased these birth control pills.  <u>See</u> <u>Karhu</u>, 2015 WL 3560722, at *5 (Martin, J., concurring) (proffering that "self-identification can and should be a sufficient means of

11

ascertaining a class, particularly for a class of consumers of a cheap and unique product," but finding plaintiff "failed to sufficiently make a self-identification argument at class-certification stage").

Moreover, reimbursement was handled on an pharmacist-by-pharmacist basis depending on what state law required. Thus, to determine a membership for Subclass A would require inquiry to the pharmacist who provided the pills to the consumer to see whether that pharmacist allowed reimbursement requests and whether the individual consumer followed through on the process. Even if this information could be obtained, it still would only identify consumers who had been sold "recalled" products. Significantly, the class definition, proposed by Plaintiffs' themselves, requires the consumer to be have been provided "defective" pills. Plaintiffs miss this important element of the proposed class when they assert that it only requires pharmacy records to identify potential members of the class. Plaintiffs have not proffered evidence to show that the blister packs they bought and consumed were improperly manufactured – or offered a plan for how potential class members could demonstrate that their products were defectively packaged. Neither named Plaintiff here retained the packaging from their pills and they offer no information as to whether consumers generally retain this material.

12

Plaintiffs argue that putative class members could prove they received a defective product by reference to their physical symptoms.  In addition to the fact that such evidence is highly subjective, it is not particularly unique enough to point toward defective product as the only source.  Here, Plaintiff Betancourt intends to show she received a defective product by offering that she suffered "PMS symptoms" and became pregnant; while Plaintiff Shepherd states she had "break-through bleeding."  Even accepting these allegations, they show that each plaintiff's suitability for the class requires individualized consideration inappropriate for class claims.  Furthermore, none of these symptoms can be uniquely identified with the defective packaging.  Finally, the description of Subclasses A and B refers to "significant physical symptoms" and Plaintiffs offer no basis upon which the contours of "significant" are described.

For the foregoing reasons, the Court finds that Plaintiffs' proposed class and sub-classes are not ascertainable.

AO 72A
(Rev.8/82)

**B.     Commonality/Typicality**[3]

Commonality "refers to the group characteristics of the class as a whole and typicality refers to the individual characteristics of the named plaintiff in relation to the class." Prado-Steiman ex rel. Prado v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000).   The Supreme Court has explained that the commonality and typicality inquires "tend to merge." General Tel Co. v. Falcon, 457 U.S. 147, 157 n.13 (1982).

Any alleged "common contention" of the potential class "must be of such a nature of that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 131 S. Ct. at 2551.   "What matters to class certification . . . is not the raising of common questions – even in droves – but, rather

---

[3]For the purposes of Plaintiffs' motion, Defendants accept Plaintiffs' contentions concerning numerosity.  But the Court notes that Plaintiffs point to the number of pill packs involved in the recall to speculate as to how many potential plaintiffs exist.  See Doc. No. [144], Ex. 3, pp. 5-9.  As the Court has described above, however, the amount of the recalled pills is irrelevant due to the manner in which Plaintiffs have proposed the class.  The proposed class requires the purchase or ingestion of pills in "defective" packaging.  Defendants further aver that of the 507,966 blister packs recalled, inspection showed only 53 of those were defectively packaged.  Plaintiffs both admit that they no longer have the packing or containers from their birth control pills.  The only specific evidence of defect in the record is the blister pack originally returned to the company by the pharmacist in Iowa. As such, the Court also has concerns about numerosity.

Although Defendants specifically challenge Plaintiffs' adequacy under Rule 23(a)(4), the Court finds it need not rule on that issue because of the significant problems with the proposed class, particularly with respect to Rule 23(b)(3) predominance.

14

the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." Id. (quotation and citation omitted).  Thus, Plaintiffs are incorrect as a matter of law in their assertion that commonality is satisfied because the conduct all relates to the recalled birth control pills.  For reasons more fully discussed in connection to predominance below, Plaintiffs have not shown that their various state law claims "generate common answers."

To satisfy the "typicality" requirement, a "class representative must possess the same interest and suffer the same injury as the class members." Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001).  "[T]ypicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." Prado-Steiman, 221 F.3d at 1279.  Here, neither proposed class representative is "typical" of the putative class.  Plaintiff Betancourt alleges that she became pregnant and delivered a baby to term.  As such, she is not typical of Subclass A (economic injury only) or Subclass C (persons who became pregnant and did not carry the pregnancy to term.  Plaintiff Shepherd, who did not become pregnant, but suffered "physical symptoms" also cannot represent Subclasses A or C, as well as Subclass D (persons who became pregnant and carried the pregnancy to term).  Because typicality compares the claims of the named plaintiffs to those of the class, Plaintiffs are incorrect in their assertion that the claims of the women in

15

subclasses B, C, and D are "substantially similar such that class action status is appropriate." <u>See</u> Doc. No. [144], Ex. 3, p. 20.

The Court finds that Plaintiffs cannot satisfy the commonality and typicality requirements of Rule 23(a).

### C.    Rule 23(b)(3)

Even if Plaintiffs could satisfy the four elements of Rule 23(a), they would also have to satisfy one of the three methods of class adjudication outlined in Rule 23(b).  Plaintiffs propose their class pursuant to Rule 23(b)(3).  Matters related to predominance and superiority under Rule 23(b)(3) include: (a) "class members' interest in individually controlling the prosecution or defense of separate actions"; (b) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (c) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (d) "the likely difficulties in managing a class action."  <u>Id.</u>  The Court must consider the "claims, defenses, relevant facts, and applicable substantive law." <u>Klay v. Humana</u>, 382 F.3d 1241, 1254 (11th Cir. 2004), <u>abrogated in part on other grounds by</u> <u>Bridge & Phoenix Bond & Indem. Co.</u>, 552 U.S. 639 (2008).  "Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of

their individual claims, such claims are not suitable for class certification under Rule 23(b)(3)." Id. at 1255 (quotations and citations omitted).

Again, Plaintiffs' focus on the recall of allegedly mis-packaged birth control pills is not the appropriate lens through which to view the predominance analysis. As the Court has explained above, resolution of the claims of the putative classes and subclasses will require the Court to focus on the individual circumstances of each member of the class. It is not enough that each class member prove that Defendants sold a defective product. Even if proven true, that fact is not enough to show liability. Each plaintiff must show in an individualized manner which "physical symptoms" she suffered, her medical history, and whether her use of any allegedly defective product resulted in these physical symptoms or a pregnancy (as opposed to any other cause of pregnancy).[4] Even for the proposed subclass of individuals who suffered economic injury only, each plaintiff will need to show some kind of harm suffered, as well as the manner in which her pharmacy handled the recall, whether any reimbursement of offered by the pharmacy, and whether the plaintiff took the opportunity for reimbursement.

---

[4]The package inserts for the birth control pills contained a warning that individuals who take the pill correctly still have a 1% chance of becoming pregnant, while those who do not take the pill correctly have a 5% chance. See Doc No. [148], Ex. F at 33.

As to the individual state law claims, the Eleventh Circuit has held that it "goes without saying that class certification is impossible where the fifty states truly establish a large number of different legal standards governing a particular claim," but "if a claim is based on a principle of law that is uniform among the states, class certification is a realistic possibility." Klay, 382 F.3d at 1261-62. The Klay court also offered the possibility of sorting plaintiffs into a "small number of groups, each containing materially identical legal standards." Id. at 1262. "The burden of showing uniformity or the existence of only a small number of applicable standards (that is, "groupability") among the laws of the fifty states rests squarely with the plaintiffs." Id.

Plaintiffs, here, do not offer any analysis as to how their claims might vary depending on their state of residence. Plaintiffs allege state law claims of breach of warranty, consumer fraud, strict liability, negligence, and unjust enrichment. Georgia follows the doctrine of lex loci delicti in its choice of law rules. See, e.g., Dowis v. Mud Slingers, Inc., 279 Ga. 808, 621 S.E.2d 413, 419 (2005). Generally, then, the place where each class member suffered harm would apply. Plaintiffs aver at least 26 different states of residence that would potentially be the source of state law. However, Georgia's choice of law rules also provide that "the application of another jurisdiction's law is limited to statutes and decisions construing those

statutes." In re Tri-State Crematory Litigation, 215 F.R.D. 660, 677 (N.D. Ga. 2003) (Murphy, J.) (quotations and citations omitted).  "When no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law." Id. (quotations and citations omitted).

If the Court were to determine that Georgia law applied in the absence of statutes, the Court would then also have to determine whether the applicable of Georgia law would offend due process. See Brenner v. Future Graphics, LLC, 258 F.R.D. 5621, 571 (N.D. Ga. 2007) (Pannell, J.).  The due process analysis requires the Court to consider whether Georgia has had significant contacts to the claims such as would create a state interest so that the application of Georgia law would not be arbitrary or unfair.  Id.  Plaintiffs have not even attempted to begin this analysis for most of their alleged state law claims.  It does not take much beyond mere description of the law to demonstrate that the Court will need to engage in a great deal of individual analysis regarding choice of law issues.

As to the specific claims, as the Court explained above, this is not a situation where a single defect appears in each product manufactured.  Thus, to consider Plaintiffs warranty claims, for example, the Court will need to address individualized factual issues for each plaintiff to determine whether she actually received a defective package. Therefore, even assuming that aspects of the Uniform

19

Commercial Code might be common across the various states, this case is different than <u>Butler v. Sears, Roebuck & Co.</u>, 727 F.3d 796 (7th Cir. 2015), cited by Plaintiffs, where the Seventh Circuit affirmed a district court's class certification in a breach of warranty case because the class covered only six states.  Other cases cited by Plaintiffs as similarly unhelpful because they involve classes of only one or two states. <u>See</u>, <u>e.g.</u>, <u>Beck-Ellman v. Kaz USA, Inc.</u>, 283 F.R.D. 558 (S.D. Cal. 2012) (California and Pennsylvania only); <u>Lee v. Carter-Reed Co., L.L.C.</u>, 4 A.3d 561 (N.J. 2010) (New Jersey only).

The Eleventh Circuit has held that "common questions will rarely, if ever, predominate an unjust enrichment claim, the resolution of which turns on individualized facts." <u>See</u>, <u>e.g.</u>, <u>Vega v. T-Mobile USA, Inc.</u>, 564 F.3d 1256, 1274 (11th Cir. 2009).  Plaintiffs have not even attempted to make a case to the Court for why it might be different in this case.  In particular, Plaintiffs have not addressed the fact that the Court would need to determine which pharmacies offered refunds to their customers and whether the potential class member accepted or refused those refunds.  Plaintiffs' citations are distinguishable. <u>See</u>, <u>e.g.</u>, <u>Rodriguez v. It's Just Lunch Int'l</u>, 300 F.R.D. 125 (S.D.N.Y. 2014) (rejecting nationwide class on unjust enrichment claim, but certifying New York class); <u>In re Cardizen CD Antitrust</u>

Litig., 200 F.R.D. 326 (E.D. Mich. 2001) (unjust enrichment claim under Michigan law only and disgorgement relief sought).

Defendants argue that state laws governing negligence and strict liability vary too much for such claims to predominate in the litigation.  See Doc. No. [148], pp. 25-26.  Plaintiffs do not respond to these arguments.  Because Plaintiffs bear the burden of demonstrating the elements of class certification, their failure to address these issues dooms the motion.  See, e.g., Cole v. General Motors Corp., 484 F.3d 717, 724-25 (5th Cir. 2007) ("The party seeking certification of a nationwide class must therefore provide extensive analysis of state law variations to reveal whether these post insuperable obstacles.") (quotations and citations omitted).  In Cole, moreover, even where the plaintiffs provided the court with the text of statutory provisions across the fifty states for breach of express and implied warranty claims, the court ultimately found that the "largely textual presentation of legal authority oversimplified the required analysis and glossed over the glaring substantive legal conflicts among the applicable laws of each jurisdiction." Id. at 725-26.  The Cole court found material differences in the laws of the fifty states in many areas, including (1) reliance, (2) notice of breach, and (3) privity of contract.  Id. at 726.

Such variations would require individualized factual determinations which preclude a finding of predominance. Id.[5]

Similar differences in law also apply to Plaintiffs' consumer protection claims. See, e.g., In re McDonald's French Fries Litig., 257 F.R.D. 669 673-74 (N.D. Ill. 2009). Plaintiffs state generally that courts have certified a class in consumer protection cases. See Doc. No. [151], pp. 9-10. But such general statements are not sufficient to prove that certification would be appropriate here. For example, Plaintiffs cite In re Checking Account Overdraft Litigation, 281 F.R.D. 667 (S.D. Fla. 2012). In that case, however, the plaintiffs had included an appendix to their motion which contained an "extensive analysis" of "certain state unfair and deceptive trade practice acts." Id. at 680. That analysis showed that the variation among states was "minimal." Id. Plaintiffs have not even attempted to conduct such a survey.

Plaintiffs' other case citations, again, are distinguishable. Significantly, in Astiana v. Kashi Co., 291 F.R.D. 493, 509 (S.D. Cal. 2013), the court certified only California consumers, so there were no issues in variation among state laws. Id. at

---

[5]In reply, Plaintiffs argue that the remedy for their breach of warranty claim is "revocation of acceptance" which is standard under the Uniform Commercial Code. See Doc. No. [151], pp. 7-8. In their complaint, however, Plaintiffs pled breach of implied and express warranty, not "revocation of acceptance." In any event, Plaintiffs do not even explain how a "revocation of acceptance" theory of relief would "eliminate the most significant variations in state warranty law." Id. at 8.

500, 509 (rejecting nationwide class for due process concerns but certifying class of California consumers); see also Saunders v. Bersk Credit & Collections, Inc., Civil Action No. 00-3477, 2012 WL 1497374 (E.D. Pa. July 11, 2012) (raising only Pennsylvania consumer protection law).

Plaintiffs do attempt to "group" their claim for damages for "wrongful conception" into those states which allow damages for pain and suffering, medical expenses, lost income, and loss of consortium, and a second group of states which allows those claims plus the costs of raising a child through the age of majority. See Doc. No. [144], Ex. 3, pp. 23-25. However, Plaintiffs fail to appreciate that while Georgia does recognize a claim for wrongful conception, for public policy reasons it does not permit recovery of the costs of raising the child. See, e.g., Fulton-DeKalb Hosp. Auth. v. Graves, 252 Ga. 441, 314 S.E.2d 653 (1984). Therefore, it is unlikely that a choice of law analysis would permit wrongful conception claims from jurisdictions that permit recovery of costs of raising a child. Again, each of these individualized choice of law questions means there is no predominance.

Finally, the damages suffered by each class member would require individualized assessment that is not amenable to class treatment. See Comcast Corp. v. Behrend, ___ U.S. ___, ___, 133 S. Ct. 1426, 1432 (2013) (requiring rigorous analysis of predominance with respect to damages). Three of Plaintiffs' four

23

proposed subclasses involve allegations of personal injury. Defendants vigorously oppose class certification for these subclasses because personal injury claims do not present common issues of fact and because individualized damage issues predominate. Plaintiffs did not respond to these arguments in their reply brief. In addition to finding that Plaintiffs have abandoned their efforts to assert these subclasses, the Court agrees with Defendants' arguments on their merits.

For personal injury subclasses B, C, D, Plaintiffs seek damages for pain and suffering, medical expenses, lost income, lost of consortium, and for those states which permit it "damages for raising a child through the age of majority." Theses types of damages would indisputably involve individualized findings and require "mini-trials" for each plaintiff. Plaintiffs have no offered any model of damages for these personal injury claims. See, e.g., In re Freight Fuel Surcharge Antitrust Litigation - MDL No. 1869, 725 F.3d 244, 253 (D.C. Cir. 2013) (after Behrend "[n]o damages model, no predominance, no class certification").

As to subclass A (economic injury), Plaintiffs proffer two damages theories: (1) commercial loss in the form of the difference between the value of the drug as promised by Defendants and its actual value as marketed or (2) full reimbursement of money paid for the recalled pills. Either analysis would also require individualized assessment. As the Court has previously stated, it is without dispute that only a small number of packages were manufactured incorrectly. To determine

the value of what each plaintiff received, she will need to provide some evidence as to whether she received a defective blister pack or not. Plaintiffs have not offered any means of such a determination beyond self-identification.

Even a "full reimbursement" model requires assessment of what each plaintiff paid for the recalled pills. But for their contention that each Plaintiff spent approximately $25 on birth control pills, Plaintiffs do not offer any model whereby those damages could be ascertained. Even if the amount paid could be discerned, additional evidence would need to be taken on an individual basis to determine whether the plaintiff's pharmacy offered reimbursement or replacement pills and if so, whether plaintiff did or did not take advantage of that offer, and why.

Under these circumstances, the common issues concerning the reasons for Defendants' recall will not predominate over the individualized questions relevant to each plaintiff's claim and thus, the Rule 23(b)(3) class mechanism will not constitute a superior method of adjudication.

For the foregoing reasons, the Court DENIES Plaintiffs' motion for class certification [144] and DENIES AS MOOT Defendants' motion for oral argument [149].

### III.    Conclusion

The Court DENIES Plaintiffs' motion for class certification [144]; DENIES AS MOOT Defendants' motion for oral argument [149]; and GRANTS Plaintiffs' motion for leave to file excess pages [150].

This case will proceed on the basis of Plaintiffs Angela Shepherd and Lauren Betancourt only.

**IT IS SO ORDERED** this 4th day of November 2015.

s/Steve C. Jones
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)